## ELDRIDGE C. PRICE, Executor, vs. MUTUAL RESERVE LIFE INSURANCE COMPANY.

*Misjoinder of Counts in Declaration—Action to Recover Premiums Paid Assessment Life Insurance Company—Cancellation of Policy—Fraudulent Representations—Plea of Limitations.*

A declaration is bad on demurrer that unites counts alleging a breach of contract by the defendant with a count alleging that the defendant fraudulently obtained money from the plaintiff.

When the holder of a policy in a mutual life insurance assessment company, with full knowledge of all the facts, refuses to pay an assessment and directs the company to cancel his policy, which was done, there is no right of action against the company by the assured or his personal representatives to recover premiums paid.

In an action by an executor against an assessment insurance company, the declaration alleged that the defendant had induced the deceased to make payments by means of fraudulent representations as to the nature of the contract, and by the same means had induced him to cancel his policy. The defendant pleaded limitations, and that the deceased had full knowledge of all the facts at that time. The plaintiff replied that the defendant had made fraudulent representations as to the meaning of the contract. Held that this plea of limitations is good.

*Decided February 5th, 1908.*

Appeal from the Superior Court of Baltimore City (NILES, J.)

The cause was argued before BRISCOE, PAGE, PEARCE, SCHMUCKER and BURKE, JJ.

*Henry C. Kennard* and *Joseph P. Merryman* (with whom was *J. Kemp Bartlett* on the brief), for appellant.

This suit is to recover premiums paid by the appellant to the appellee, on a contract of insurance which the appellant claims was broken by the appellee. The questions before the Court arise on the pleadings, and come up on demurrers by this appellee to the 2nd, 3rd and 4th rejoinders to the appellant's replication to the appellee's 23rd plea; the 2nd and 3rd surrejoinders to the 2nd, 3rd, 4th, 5th and 6th rejoinders to

the appellee's 3rd plea; to the surrejoinder to the appellee's 6th rejoinder, and to the surrebutter to appellee's rebutter.

1. There is no count for deceit in the *narr*. Actions on the case for deceit lie for the recovery of uncertain damages for procuring a contract by fraud and deceit. Every count in the *narr* is to recover a sum certain for money received by the appellee under a breach of contract and at the head of the *narr* are the usual preparatory words in *assumpsit* "for money payable by the defendant to the plaintiff." 1 *Poe on Plead.*, sec. 198; *McAleer* v. *Horsey,* 35 Md. 452; *Buschman, &c.,* v. *Codd,* 52 Md. 207.

2. Under our practice counts in deceit and in *assumpit* may be properly joined. They both originally belonged to the class of actions of trespass on the case. 1 *Saunders on Plead. & Ev.* , 162–3.

3. The provision of our Code (2 Code, 1888, Art. 75, sec. · 3) which was substituted for the Act of 1856, ch. 112, which allowed all forms of action, provides that "any declaration which contains a plain statement of facts necessary to constitute a ground of action shall be sufficient."

4. The test is, can the same plea be pleaded to and the same judgment rendered on all the counts. *Williams* v. *Bramble,* 2 Md. 318; 1 *Chitty on Plead.*, 222. "Formerly it was very much the practice to resort to special action on the case in the nature of deceit. Of late years, however, *assumpsit* has been found to be a more convenient and satisfactory remedy and is now almost universally used." 1 *Poe on Plead.*, sec. 200. "Trespass, trover and case may be joined because the same plea can be pleaded, the same judgment rendered." 1 *Poe on Plead.*, sec. 285.

5. If the Court below had stopped at its decision that the · *narr* was bad for misjoinder, that could easily have been cured by amendment, but that Court went further and decided that as the appellant had replied to a letter of the appellee, dated February 28th, 1898, directing the appellee to cancel his policy, he had abandoned any recovery. To the plea of limitations, the appellee replied fraud, denied the averments of

the appellee's rejoinder, and further set forth that he had been induced to direct the cancellation of his policy by reason of the appellee's fraudulent representations of the meaning of his contract of insurance contained in said letter, and by said fraud had been kept in ignorance of his rights until less than three years before this suit (Code, vol. 2, sec. 3). The Court below held that the appellant was bound to know the law, and that *ignorantia legis* was no excuse. In this the lower Court was clearly in error. The doctrine of *ignorantia legis* does not apply to private contracts unless their language is "so plain and familiar that it would be doing violence to probability to impute ignorance in such cases." *La Mott* v. *Bowley*, 6 H. & J., 525–6; *Cumberland Coal & Iron Co.*, v. *Sherman*, 20 Md., 152.

Of the contract in this case, the House of Lords says it is "tricky." This was a document which anyone, even a skilled, person, would be unable to understand without very careful and deliberate explanation. "There has been great ingenuity in concealing the real effect of the contract." "After three days of elaborate exposition their Lordships arrived at what the real meaning was." *Foster* v. *Mut. Res. Life Ins. Co.*, 20 The Times L. R. 717; *Cross* v. *Mut. Res. Life Ins. Co.*, 21 The Times L. R. 16.

So the language of this contract was evidently not "so plain and familiar" that the doctrine *ignorantia legis* applied to it. "Ignorance of particular private rights is equivalent to ignorance of fact." *Pollock on Contract*, 542.

The appellant therefore contends that the replication of fraudulent representation of the meaning of the contract is a good and conclusive reply to the plea of limitations. See *Wear* v. *Skinner*, 46 Md. 257. There could be no acquiescence without knowledge. *Chase* v. *Taylor*, 4 H. & J. 54, 59, 61–2; *Wilson, Trustee*, v. *Md. Life Ins. Co.*, 60 Md. 151, 167.

Inasmuch as the demurrers of the appellee admit all the breaches alleged by the appellant, and that the statements in the letter of the appellee of February 8th, 1898, were false and fraudulent, and though their falsity and fraud were not

discovered, and could not by ordinary diligence be discovered within three years prior to the institution of the suit, the Court below held that the appellant could not recover.    This was clearly error.

*John Prentiss Poe* (with whom was *Jno. M. Carter* on the brief), for the appellee.

The declaration claims the right of the plaintiff to recover all the assessments and premiums and dues paid by the plaintiff's testator from the time his policy was taken out in 1882 down to March, 1898, when he discontinued payment.   At a later stage of the pleadings the plaintiff departs from this pretension and limits his claim to a recovery of the alleged illegal gross and excessive premiums levied and paid in 1895, 1896, 1897 and up to March, 1898.

As a result of a correspondence between the plaintiff's testator and the defendant, beginning on February 1st, 1898, and concluded on March 2nd, 1898, in which the defendant openly and distinctly claimed the right under the terms of the policy to increase its assessments, the plaintiff's testator finding the assessments too burdensome, ordered his policy to be cancelled and stopped paying altogether; that his policy was accordingly cancelled by mutual consent; that he acquiesced in or submitted to the contention and claim of right of the defendant, and rather than pay the assessment No. 97 levied in March, 1898 and payable on April 1st, 1898, he chose to give up his policy and membership in the company, and that during his lifetime he took no steps to call in question the rightfulness of the defendant's claim, and that when he died, on June 16th, 1902, he had ceased for more than four years to be a policy holder of the defendant.   His actual knowledge of the attitude and claim of the defendant in relation to the subject complained of appears from his own letters, and cannot be, and is not disputed, and there is no statement in the plaintiff's replication to the twenty-third plea, nor in any of his subsequent pleadings, of any fact that was concealed from him or suppressed by the defendant.

When the alleged illegal and excessive assessments were levied and demanded, he had the option to pay them, and continue to be insured; or to refuse to pay them and contest in Court the right of the defendant to levy them; or to quit altogether.    He chose to quit.    He did not wait to be notified by the defendant that in consequence of his failure to pay Mortuary Call No. 97, his policy had lapsed, and that if he wished to continue his membership he would be re-instated upon paying the overdue and unpaid assessment, but he voluntarily ordered the company to cancel his policy, and it was actually concelled by mutual consent.

Upon the pleadings it stands confessed that at a time when the plaintiff's testator was in a situation either to dispute the open and declared claim of the defendant to increase the assessment (which it is to be observed was a question of law exclusively), or to submit to this alleged erroneous and illegal claim and quit, he decided to quit and he did quit. He put an end by his own act to his contractual relations with the defendant.

Confronted with this written order to cancel his policy, and the conceded fact that it was accordingly cancelled, and all claims under it thus deliberately abandoned and extinguished, his executor, the plaintiff, six years after such cancellation, seeks to avoid this confessed cancellation by pleading that his testator was induced to write his letter of March 1st by the statements in the defendant's letter of February 8th, which he sets out *verbatim*.    In other words, the plaintiff relies on this letter of February 8th, 1898, as a sufficient reason for an effectual repudiation by him of the order to cancel the policy given by his testator on March 1st, 1898.

Now, if it were conceded that a contract annulled by mutual consent, and remaining annulled for six years could, under any circumstances be renewed and its obligations restored upon the simple ground that the party at whose instance it was thus cancelled alleges that he had been misled into such action by the other party by some fraudulent misstatement or concealment of a matter of material, ascertainable fact, we

have no such case here.   But for the letter of February 8th, 1898, the contention is that the letter of March 1st, 1898, would not have been written and the policy *might* not have been abandoned and cancelled and hence, after the death of the plaintiff's testator, the plaintiff, as his executor, can successfully repudiate his testator's act and for the benefit of his estate treat the policy as not thus cancelled.

Let us look now to the letter of February 8th, and see what untrue or fraudulent statement it contains, the subsequent discovery of which authorizes the subsequent letter of March 1st to be ignored as completely as if it had never been written and never acted on by the parties.   It begins by acknowledging receipt of the letter from the plaintiff's testator of February 1st, 1898.   It then asserts that the re-apportionment of the rates (which was the only matter complained of by the insured) "is strictly in accordance with the terms of the contract"—and "is necessary in order that you and the other members of your class should pay your proportionate share of the mortality of the association."   It then tells the insured the reason why he ought to pay the increased cost of carrying his insurance.   No concealment here.   No misstatement of fact, but a distinct argument to prove the correctness and validity of the defendant's position as to the meaning of the policy; which position is plainly asserted.

It then takes up the question of the "fifteen year class," and explains what that class refers to and what it takes its name from, and corrects the errors into which the insured had fallen on this subject.   It then tells the insured that his policy has no cash surrender value, in these words, viz.   "Inasmuch as you have not been called upon under your policy for the excess premium necessary to create such a reserve as would meet the increasing cost due to advancing age in the later years, but have paid merely current cost, there is no fund to the credit of your policy from which a paid up surrender value can be granted, as your payments have not been sufficient to accumulate the same."

There is no concealment—no false statement here, and

nothing to give the plaintiff any justification or excuse for the extraordinary claim that the cancellation of the policy under the letter of March 1st, 1898, can now be disregarded and ignored, and the plaintiff now entitled to recover the premiums voluntarily paid by his testator from 1882 to 1898. *Price v. Mutual Reserve Life Ins. Co.*, 102 Md. 688; *Mutual Life Ins. Co. v. Sears*, 178 U. S. 345; *Ryan v. Mutual Reserve Ins. Co.*, 96 Fed. Rep. 796; *Mutual Life Ins. Co., v. Phinney*, 178 U. S., 327, are quite conclusive in our favor.

BRISCOE, J., delivered the opinion of the Court.

This appeal brings up for review a judgment in favor of the defendant for costs rendered on the 23rd of January, 1907, in the Superior Court of Baltimore City, on the defendant's demurrer to the plaintiff's declaration. The questions arise solely upon the pleadings. They are very voluminous, and some of them were settled on a former appeal in the case of *Price v. Mutual Reserve Life Ins. Company*, 102 Md. 684.

The amended declaration contains thirteen counts, and to this declaration the defendant pleaded twenty-three pleas. Subsequently, it appears there were interposed in turn by the plaintiff and defendant demurrers, replications, rejoinders, surrejoinders, rebutters and sur-rebutters, and the pleadings resulting in five demurrers on the part of the defendant.

The first four counts of the declaration are the common counts in *assumpsit*, the next eight are for alleged breach of a contract of insurance and the thirteenth count is as follows:

"The dcfendant, by false and fraudulent representations made to the plaintiff's testator, induced the said testator to accept a policy of insurance, No. 8000, issued by the defendant on the life of said testator; and said testator, from 1882 to 1898, inclusive, paid the defendant, for premiums and mortuary assessments, the sum of twenty-three hundred dollars ($2,300), which payments were made by the said testator to the defendant, on representations of the said defendant, which representations were false and fraudulent; and the said mortuary assessments during said period of time, viz., from 1882 to

1898, inclusive, were illegal and wrongfully made, and assessed on said policy No. 8000 by the defendant, and of which said fraud and wrong, the plaintiff's testator was ignorant at the time of making said payments.

It is insisted on the part of the defendant that the whole declaration is fatally bad on general demurrer, because of the mis-joinder of twelve counts in *assumpsit* with one count, thirteenth, alleged to be in tort, towit, a count in deceit.

There was no error in the rulings of the Court below in sustaining the defendant's demurrer to the plaintiff's declaration in this respect.

The thirteenth count charges as stated the fraudulent procurement of money from the plaintiff, the fraud consisting in certain representations made by the defendant to the plaintiff in relation to a certain policy of insurance and the premiums and mortuary assessments thereon. The clear issue upon this count would be whether or not the defendant induced the plaintiff by fraud to accept a certain contract. This issue, it is clear, cannot be united in one suit with other counts declaring upon the contract. The usual test and rule in such cases being can the same pleas be pleaded, and the same judgment rendered on all the counts. *Williams* v. *Bramble*, 2 Md. 313.

While the decisions elsewhere are somewhat conflicting, the adjudications in this State will be found to the effect that a count for a deceit cannot be joined with a count in *assumpsit.*

In *Weaver* v. *Shriver*, 79 Md. 529, it is held, an action on contract and an action of deceit in procuring the contract cannot be joined. The Court there said: In some jurisdictions this practice is permissible, notably in Massachusetts. CH. J. SHAW in *Cook* v. *Castner*, 9 Cush. 277, says, such a course in practice tends to do justice between the parties. But no such practice prevails in this State. In *Pearce* v. *Watkins*, 68 Md. 534, it is held, an action on alleged policies of insurance cannot be joined with an action of deceit for fraudulently procuring money by means of pretended policies of insurance.

In *Chamberlain* v. *Robertson*, 7 Jones' Law (N. C.) 12, the North Carolina Supreme Court held, that a count for deceit

in the sale of goods, cannot be joined with one in *assumpsit* on a warranty of soundness. *Mahurin* v. *Harding*, 8 Foster (N. H.) 128; *Fennemore* v. *U. S.*, 3 Dall. 357.

There being a misjoiner of counts in this case the declaration was properly held to be bad on demurrer, and as the plaintiff failed to cure the defect by amendment, the judgment at the conclusion of the case was correctly entered against him.

We come then to the principal question in the case presented by the final pleadings demurred to and that is, does the plaintiff show on the face of the pleadings such a case, as entitles him to recover against the defendant.

It will be seen that issue was joined upon all the pleas, except the third, the plea of limitations and the twenty-third, which was a plea on the merits to certain counts of the declaration. The amended twenty-third plea is as follows:

"And for a further and final plea to the fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth and thirteenth counts of the amended declaration, it says that on or about the 1st day of April, 1898, the plaintiff's testator, with full knowledge of all the acts and doings of the defendant with reference to the making and collecting of assessments upon the policy of insurance in said counts mentioned and without any concealment or misrepresentation whatsoever made by the defendant to him, voluntarily elected to discontinue payment of the mortuary assessments and dues lawfully levied and assessed by the defendant upon said policy and thereby voluntarily suffered the said policy to lapse.

"And the defendant says that by said voluntary discontiuuance on the part of the plaintiff's testator to pay said assessments all his rights and claims against the said Mutual Reserve Fund Life Association and against the defendant as the alleged successor of said Mutual Reserve Fund Life Association wholly ceased and determined, according to the express terms and conditions of said policy, and that all the obligations of said Mutual Reserve Fund Life Association and of this defendant as the alleged successor thereof wholly

ceased and ended and the said policy in said counts mentioned became wholly null and void."

To the plaintiff's replication to these pleas, the defendant filed six rejoinders. The second in substance alleges that on April 1st, 1898, the plaintiff's testator voluntarily and with full knowledge of all the facts, refused to pay the assessment due on that day, and directed the defendant to cancel the policy; that by said direction the policy was cancelled; that the letter of March 1st, 1898, concludes with an order, "Please cancel my policy as requested at the time mentioned." They further aver that the alleged causes of action were discovered by the plaintiff more than three years before the suit, and the policy was cancelled as directed by mutual consent. To the rejoinders the plaintiff filed sur-rejoinders and to these, the defendant demurred. There was no error in the ruling of the Court upon the demurrers. In *Price* v. *Mutual Reserve Co.*, *supra*, on the former appeal, this Court distinctly said: "These facts are conclusive against any claim under the policy;" and referred to the following cases, to sustain its conclusion. *Mutual Life Ins. Co.* v. *Sears*, 178 U. S. 345; *Ryan* v. *Mutual Reserve Ins. Co.*, 96 Fed. Rep. 796; *Mutual Life Ins. Co.* v. *Phinney*, 178 U. S. 327.

And it was further said, inasmuch as the plea of limitations as set out by the appellee's plea went to the declaration the Court committed no error in sustaining the demurrer to the declaration and the plea of limitations.

We have examined the voluminous pleadings set out in the record in this case, with considerable care, and find no error in the rulings of the Court below thereon.

We hold, therefore, that the plea of limitations was properly pleaded and the facts alleged in the defendant's twenty-third plea, going to the merits of the case, constitute a complete bar to the plaintiff's action set out in the declaration under the pleadings in the case. The defense of limitations having been properly sustained, the plaintiff's action herein would be defeated, apart from its other defenses. The plaintiff's testator, under the facts in this case, clearly elected to discon-

tinue the payment of the assessments and dues levied upon his policy and voluntarily suffered it to lapse. On June 16th, 1902, he had ceased for more than four years, to be a policy holder of the defendant. Apart from this, he voluntarily directed the defendant to cancel the policy and this was actually done. These facts are admitted upon the face of the pleadings and by the correspondence between the parties, set out in the record.

There is nothing upon the pleadings to avoid or overcome the matters and facts, relied upon by the defendant to defeat the plaintiff's action, in this case.

The plaintiff not pleading over, the defendant was entitled to a judgment on the pleadings, and there being no reversible error, the judgment will be affirmed.

*Judgment affirmed with costs.*