J. KEMP BARTLETT

*vs.*

THE CALVERT BANK, a Corporation.

*Stock*: *pledges of—; as security for another's loan; restriction, not communicated to bank.*

J. K. B. loaned to E. M. N. certain shares of the capital stock of a corporation for the purpose of enabling the latter to secure a loan from a bank, to which bank the stock was assigned by E. M. N., as security; it had been agreed between B. and N. that the stock should not be pledged with the bank, by N., for any greater sum than $3,000; the agreement, however, did not appear to have been communicated to the bank. Attached to the stock certificate was an assignment of the stock in blank in the usual form, with a blank power of attorney giving power to sell, hypothecate and set over to any person or persons the whole or any part of said stock, with all the powers therein mentioned, etc., which was signed and sealed by the said J. K. B. and duly witnessed. *Held*, that under the powers of attorney, E. M. N. had the right and power to pledge the stock with the bank as security, not only for the $3,000 agreed upon between them, but for any other debt he might owe the bank.

p. 636

In the absence of any notice to the bank of the restriction alleged to have been put on E. M. N. at the time of the trans-

fer of the stock, etc., it was *held,* that the bank had the right to rely upon the stock both for the $3,000 which had been loaned N. upon the security of the stock, and also for all other indebtedness by N. to it.                                              p. 637

*Decided June 25th, 1914.*

Appeal from the Superior Court of Baltimore City. (HEUISLER, J.)

The facts are stated in the opinion of the Court.

The following are the prayers offered by the plaintiff and the defendant and the action of the Court on such:

*Plaintiff's Prayer*—If the Court, sitting as a jury, shall find that the plaintiff delivered to one Edgar M. Noel the certificate for thirty shares of stock of the U. S. Fidelity & Guaranty Company standing in the name of and belonging to the plaintiff, offered in evidence, and that at the time of said delivery it was distinctly agreed between the plaintiff and the said Noel that Noel was not to borrow upon the said certificate from the defendant a sum exceeding three thousand dollars ($3,000), and that at the time of said delivery and presentation to the defendant of said certificate by said Noel, if the Court, sitting as a jury, shall so find, the assignment and power of attorney appearing upon the back of said certificate was not filled in but merely signed in blank by the plaintiff, and that the defendant loaned to said Noel $3,000 upon the said certificate as collateral therefor, with actual knowledge that the said certificate was not the property of said Noel but of the plaintiff and that subsequently the said original certificate for thirty shares was split up into two certificates, one for twenty shares and the other for ten shares, the latter certificate being returned to the plaintiff and the former being retained by the defendant, and that the plaintiff subsequently, after the maturity of said loan and while the said certificate for twenty shares was still in

the possession of the defendant tendered to the defendant $3,000 and all accrued interest unpaid thereon and thereupon demanded a return of said certificate, and that the defendant refused to return the same unless the plaintiff made a payment also on account of an indebtedness of the said Noel to the said defendant contracted subsequent to the making of the said $3,000 loan, and that the plaintiff had not authorized the pledge of the said certificate as security in whole or in part of said second loan of the said Noel, then the verdict must be for the plaintiff. (*Rejected.*)

And the defendant offered the following prayers:

*Defendant's First Prayer*—The defendant prays the Court to rule as a matter of law that under the pleadings in this case there is no evidence legally sufficient to entitle the plaintiff to recover, and therefore, the verdict of the Court, sitting as a jury, should be for the defendant. (*Rejected.*)

*Defendant's Second Prayer*—If the Court, sitting as a jury, find that the plaintiff signed the power of attorney dated March 20th, 1912, attached to the certificate for 20 shares of stock of the United States Fidelity & Guaranty Company offered in evidence, and delivered said power of attorney and certificate of stock to E. M. Noel; and that the same were delivered by E. M. Noel to the Calvert Bank together with the collateral note of July 23, 1912, offered in evidence; and that said note was signed by E. M. Noel and delivered to said Calvert Bank for a valuable consideration; then the Court rules as a matter of law that the legal effect of the delivery by E. M. Noel of said stock and said power of attorney attached thereto and said collateral note, was to pledge said stock not only for the $3,000 mentioned in said collateral note of July 23, 1912, but also for any other indebtedness then or thereafter owing by the said E. M. Noel to said Calvert Bank. And if the Court, sitting as a jury, find that at the time of said delivery of said collateral note of July 23, 1912, and said power of attorney and cer-

tificate of stock the said E. M. Noel was indebted to the
Calvert Bank upon another note for $3,000 dated July 1,
1909, and that both said notes with certain interest thereon
remain unpaid, then the Court rules as a matter of law that
the tender made by the plaintiff to defendant as testified to
by him was not sufficient to entitle the plaintiff to a return
of said certificate of stock, and the verdict of the Court,
sitting as a jury, should be for the defendant.    (*Granted.*)

The cause was argued before Boyd, C. J., Briscoe,
Burke, Thomas, Pattison, Urner and Constable, JJ.

*Edgar Allan Poe,* for the appellant.

*S. S. Field,* for the appellee.

Briscoe, J., delivered the opinion of the Court.

This action was brought by the appellant against the ap-
pellee bank, in the Superior Court of Baltimore City, to
recover the possession of a certificate dated, May 20th, 1912,
for twenty shares of stock of the United States Fidelity &
Guarantee Company, which had been pledged to the appellee
bank, by one Edgar M. Noel, now deceased, as collateral
security for certain loans, made by the bank to Noel, in his
lifetime.

The certificate of stock belonged to the appellant, but had
been loaned to Noel, for the purpose of pledging it to the
appellee bank, as collateral security, under a blank power
of attorney dated the 20th day of May, 1912.

The case was tried before the Court, sitting as a jury, and
from a judgment in favor of the defendant, the plaintiff has
taken this appeal.

During the trial two bills of exception were taken by the
appellant, one to the granting of the defendant's motion to
strike out certain testimony which had been admitted sub-
ject to exception, and the second to the ruling of the Court,
in rejecting the plaintiff's first prayer, and in granting the
defendant' second prayer.

These two exceptions bring up for review, the only questions presented by the record, and which will now be considered by us.

As the plaintiff's second exception contains the rulings upon the prayers and as these present the substantial questions in the case, we will consider it first.

The defendant's second prayer which was granted by the Court, we think, correctly states the law of the case. It ruled as a matter of law, under the facts of the case, that the legal effect of the delivery by E. M. Noel of the stock, and the power of attorney attached thereto, and the collateral note, was to pledge the stock not only for the $3,000 mentioned in the collateral note of July 23, 1912, but also for any other indebtedness then or thereafter owing by E. M. Noel to the defendant bank.

The plaintiff's first prayer, was the converse of the defendant's second prayer, and was properly rejected. The reporter will set out these two prayers in his report of the case.

The substantial facts of this case are practically undisputed, and may be thus stated. The record discloses, that sometime in July, 1908, the plaintiff loaned Edgar M. Noel, thirty shares of the capital stock of the United States Fidelity and Guaranty Company, belonging to him. Noel subsequently secured a loan of $3,000 from the defendant bank, by pledging the stock, as collateral security for the loan. This loan was renewed from time to time, the last renewal note being dated July 23rd, 1912. The note which was delivered to the bank and signed by E. M. Noel, is as follows:

"$3,000.00.          Baltimore, July 23, 1912.

"Four months after date I promise to pay to the Calvert Bank or order, at the Banking House of said Bank, three thousand xx/100 dollars, for value received, having deposited as collateral security for the same following named securities:

"20 shares U. S. F. & G. Co.

" * * * agree that the above named securities, and any others needed to or substituted for them, all cash at any time to the credit of our account, and all notes and drafts deposited by us for collection, and all other property of the undersigned in said bank, may be held as collateral security for all the obligations and liabilities of the undersigned and of the endorsers hereof, due to the said bank or to become due, or that may hereafter be contracted, with the understanding that a margin of . . . . . . . . per cent. on the market value of the collateral security shall be maintained on demand, and if said demand for margin is not promptly met, or said obligations and said liability are not promptly paid at maturity, . . . . . . . . . . . . . . . hereby authorize said bank or its President or its Cashier to sell the collateral security, or the property represented by the same, either at private or public sale, at any time thereafter, without advertisement or notice to . . . . . . . ., and with the right on the part of said bank to become purchasers thereof at such sale, freed and discharged of any equity of redemption, the proceeds to be applied to the payment of the above-mentioned obligations and liabilities, any excess or deficiency to be paid or received by . . . . . . . . . as the case may be, and . . . . . . . . . . . . further authorize the said bank, or its President or its Cashier to use, transfer or hypothecate the collateral security, they being required on payment or tender at maturity of the amount of the said obligations and liabilities to return an equal amount of said securities, and not the specific securities pledged.

    T/D50.25                    Demand.

                                        "E. M. NOEL.

                (Reverse Side.)
    "For value received . . . . . . . . . . . . . hereby agree to become surety for the faithful performance of the obligations contained in the within note."

The certificate for the twenty shares of stock, is in the name of J. Kemp Bartlett, dated the 20th of May, 1912, and is in the usual form. It was delivered to the bank as collateral security for the note of July 23rd, 1912. To this certificate of stock was attached the following power of attorney dated the 20th day of May, 1912, and signed by J. Kemp Bartlett.

"*Know All Men By These Presents,* That I, J. Kemp Bartlett, for value received, have granted, bargained, sold, assigned, and fully and irrevocably transferred, and do by these presents, grant, bargain, sell, assign and fully and irrevocably transfer for all purposes unto . . . . . . . . . . . . . . . twenty (20) shares of the capital stock of the United States Fidelity and Guaranty Co., standing in . . . . . . . . . name, on the books of . . . . . . . . . , and do hereby constitute and appoint . . . . . . . . . . . . . . irrevocably for . . . . . . . . . . to be . . . . . . . . . . . . true and lawful attorney, and in . . . . . . . . . name and stead, to sell, hypothecate or dispose of in any manner and for any purpose, assign, transfer and set over to any person or persons the whole or any parts of said stocks at once or from time to time, and for that purpose to make all necessary acts or assignment or transfer, and with power to substitute one or more persons in . . . . . . stead, as to the whole or parts of said stock, with all the powers herein mentioned . . . . . . . . . . . hereby ratify and confirm all acts that . . . . . . . . . . said attorney, or any substitute or substitutes under . . . . . . . . . . . . shall lawfully do by virtue hereof.

"In witness whereof, have hereunto set my hand and seal this twentieth day of May, A. D. 1912.

"J. Kemp Bartlett. (Seal)

"Signed, sealed and delivered in the presence of:

"F. Aloysius Michel."

The bank also holds a demand collateral note of Noel's, dated July 1, 1909, for an additional loan of $3,000. The collaterals held, by the bank, are insufficient to pay this last

named note, and it claims the right to hold the twenty shares of stock as collateral security for the payment of both notes, under the terms of the contract and pledge by Noel, at the time of the loan. The facts and history of the two loans are thus stated by the appellee in his brief. "The notes which the bank now holds are a four months' collateral note of July 23, 1912, for $3,000, and a demand collateral note of July 1, 1909, each note being for $3,000. The specific certificate of twenty shares sued for in this case was pledged and delivered with the note of July 23, 1912, but the note of July 23, 1912, evidenced a debt which originated in July, 1908, at which time there was pledged a certificate for thirty shares of stock of the United States Fidelity & Guaranty Company. The bank held this certificate for thirty shares of stock at the time when the loan of July 1, 1909, evidenced by the demand note for $3,000 was made, and Mr. Page, the president of the Calvert Bank, testified that it was part of the inducement for making the loan of July 1, 1909, that there was considerable margin in the thirty shares held as collateral for the first loan. The original note of July, 1908, was renewed from time to time, the last being the note of July 23, 1912. In the early part of 1912, the appellee permitted the certificate for 30 shares to be withdrawn and a certificate of twenty shares substituted in its place. At that time the stock had advanced so much in value that the twenty shares were worth about as much as the thirty shares were when originally pledged."

There is no dispute as to the loan of the stock by the appellant to Noel, but it is contended, there was a distinct understanding and agreement between them that Noel should not borrow upon the stock a sum in excess of $3,000.

While this restriction and limitation may have been understood between the appellant, and Noel, there is no evidence whatever, that it was ever communicated to the bank or to any of its officers. The plaintiff testified that he never informed the bank of the agreement, and the testimony as to

what Noel in his lifetime told the appellant, which had been admitted subject to exception, was properly stricken out at the conclusion of the testimony.

The evidence upon the part of the defendant was to the effect, that the bank never had any notice of the agreement between the appellant and Noel that the stock should not be pledged for more than a $3,000 loan.

The witness Page, president of the bank, testified as follows: "Q. Did you or the bank have any notice of any agreement that the stock should not be hypothecated for more than $3,000? A. No, sir; on the contrary, I figured to Mr. Noel, when the second loan was made, the margin on it, when the second loan was made I figured it, I went and got the envelope and figured it up and he was thoroughly conversant of the fact that we were holding it for that purpose. Q. He never told you Mr. Bartlett said it was not to be pledged generally, but only for that loan of $3,000? A. No, sir; never, as I said a moment ago, he knew it could be pledged for more, because he knew it could be figured on the margin."

It is very manifest, we think, that under the power of attorney, given Noel by the appellant, he had the right and power to pledge the stock as collateral security not only for the loan of $3,000, but also for any other debt he might owe the bank. The very face of the instrument itself shows that Noel had this power. The language of the power of attorney is "do by these presents, grant, bargain, sell, assign and fully and irrevocably transfer for all purposes unto .........twenty (20) shares of the capital stock......... and do hereby constitute and appoint.........true and lawful attorney,..........to sell, hypothecate or dispose of in any manner and for any purpose, assign, transfer and set over........."

There was nothing upon the face of the certificate of stock, the collateral notes or the power of attorney, that would put the bank on inquiry or impart notice, that Noel was limited

or restricted in any way in the disposition or the hypothe-cation of the stock. On the contrary, any one examining the power of attorney would see that he had power to trans-fer the stock "for all purposes," and to sell, hypothecate or dispose of it in any manner and for any purpose.

The cases of *Taliaferro* v. *Bank,* 71 Md. 204, and *German Savings Bank* v. *Renshaw,* 78 Md. 475, relied upon by the appellant, will be found upon an examination to be unlike this case. In those cases there was no power "to hypothecate or dispose of in any manner and for any purpose," as in this case, but the power was merely to sell, transfer and set over to blank but not to pledge for debt.

In *Merchants' Bank* v. *Williams,* 110 Md. 352, it is said: "The stock was pledged not for the $216.45 only, the amount required by Mrs. Williams to complete her purchase, but also for the general debit account of Mr. Williams with the firm of Wilson, Colston & Co., and therefore, the defendant is entitled to have deducted such amount, with interest, to date of trial as Mr. Williams may owe that firm."

In the absence of any notice by the bank of the alleged restrictions which the appellant claims, he placed upon Noel at the time of the transfer of the stock to him, we think, it is clear, that the bank, has the right to rely upon and to hold the stock here in question, not only for the $3,000 men-tioned in the collateral note of July 23, 1912, but for all other indebtedness of Noel to it.

It follows, for the reasons stated, that the Court below committed no error in rejecting the plaintiff's prayer, and in granting the defendant's second prayer. There was no error in granting the defendant's motion to strike out the testimony set out in the first bill of exception. The judg-ment will be affirmed.

*Judgment affirmed, with costs.*