DORA MYLANDER ET AL. *v.* GEORGE W. PAGE,
RECEIVER, ET AL.

[Nos. 22-24, January Term, 1932.]

*Decided April 7th, 1932.*

The causes were argued before Bond, C. J., Pattison, Urner, Adkins, Digges, Parke, and Sloan, JJ.

*Walter C. Mylander* and *Nathan Patz,* for the appellants.

*Herbert Levy,* with whom was *William Ewin Bond* on the brief, for the appellees.

BOND, C. J., delivered the opinion of the Court.

Each of the appellants, plaintiffs below, brought suit at law to recover shares of stock, or their value, and damages for the detention of them, from the Chesapeake Bank, the Coale Corporation, and the two individuals, Delcher and Coale; and, after the appointment of the bank commissioner as receiver of the assets of the bank, he was, upon petition and order of the court of law in which the suits had been filed, substituted in each case as defendant in the place of the bank. The stock sought was first pledged with the bank by Coale, Incorporated, or Coale, individually, for a loan of his own. It appears that he later sold 300 shares of it to the plaintiffs in equal proportions, and the plaintiffs paid him the full purchase price, and new certificates were procured in their names, but Coale failed to pay off the loan as security for which the stock was held, and deposited the new certificates, too, as security, along with powers of attorney or assignments, in blank, from the plaintiffs. The plaintiffs produced evidence to show that these powers or assignments had been given for another purpose never carried out, and that Coale used them fraudulently to continue their stock pledged as security for his unpaid debt to the bank. The bank, they contend, released its lien on the stock by surrendering the old certificates to have the new ones issued in the plaintiffs' names, and, further, could not hold the new certificates as a *bona fide* pledgee, because it had notice, or knew facts to put it upon notice, of the plaintiff's actual rights in the stock, and through one of its officers, Delcher, became a participant in the fraudulent act of the broker, Coale, in misusing the powers or assignments.

The three suits, all of which involved identical facts and questions of law, were consolidated and tried as one before the court without a jury, and verdicts and judgments were rendered in favor of the bank commissioner, the substituted defendant, and Delcher, and against the remaining defendants. On appeal the plaintiffs contest the judgment in favor of the receiver and Delcher, alleging errors in rulings on evi-

dence and prayers for declarations of the law applicable to the case.

The receiver is in possession of the stock certificates, and is apparently the only defendant in possession of any considerable assets; and he is substantially, therefore, the one defendant pursued. The plaintiffs' prayers for rulings of law referred only to the receiver and the bank as defendants. There was no dismissal of the other defendants, however, and verdicts and judgments were duly rendered for or against them as stated. A question of the propriety of maintaining such actions against the bank commissioner, as receiver, in place of the bank, arises at the outset, and should not be passed without comment, although it was not discussed in argument, and the record contains no mention of it.

Plainly, we think, the bank commissioner, when he becomes receiver of a state bank, does not become the successor of the corporate personality, as does a statutory receiver upon dissolution. The statue under which he is appointed, Code, art. 11, sec. 9, designates him as the receiver and possessor of the assets for whatever liquidation may prove to be necessary. The corporation itself is not only left in existence, but it may, according to the terms of the statute, be permitted to resume business. And by those terms, too, the court of equity, when applied to, assumes jurisdiction over only the property and assets of the corporation. This being true, how are these suits excepted from the resulting general principle that a receiver does not succeed as defendant in the suits pending against the corporation? *Emory v. Faith,* 113 Md. 253, 77 A. 386; 1 *Clark, Receivers,* sec. 561; *St. Louis Union Trust Co. v. San Benito Co.,* 4 Fcd. (2nd), 1007; *Fountain v. Stickney,* 145 Iowa, 167, 123 N. W. 947; *Green v. Coleman-Nelson Corp.,* 115 Okl. 144, 242 P. 196; *People v. Smith Co.,* 230 App. Div. 268, 275, 243 N. Y. S. 446; *Deschenes v. Tallman,* 348 N. Y. 33, 36, 161 N. E. 321. And if these particular suits can be excepted on proper. grounds, then has the equity court which has jurisdiction of the assets consented to the substitution of the receiver as defendant?

Counsel for the appellants describe the actions brought as

in detinue, the old form of action for the recovery of goods in specie, and the judgments demanded in the declarations were for "the return of said goods, or their value, and $5,000 for the detention," the established form of demand in detinue. Code, art. 75, sec. 28. But detinue for the return of goods, like replevin, is maintainable only against one who has the goods in his possession (1 *Poe, Pl. & Pr.,* sec. 521), and here Delcher, the Coale Corporation, and Coale, the individual, who were not in possession of the stock sought, were joined as defendants, and the verdict and judgment rendered against the Coale Corporation and Coale, without any objection made to form or contents, were for damages only. If the plaintiffs should succeed further and obtain a verdict and judgment against the bank commissioner and Delcher, there would apparently have to be a distinction drawn, and the recovery against Delcher restricted to damages, treating the suits as the equivalents of actions in trover, while the receiver would be required to return the stock claimed. "Every judgment in detinue, and replevin," says the Code, art. 75, sec. 128, "and every verdict therein shall ascertain separately the value of the goods and chattels and the damages, if any, for their detention." But the verdict and judgment taken in these suits against the Coale corporation and Coale were "for $2,000, the sum found by the court, with interest from April 2, 1931, and costs of suit."

For recovery of the stock in specie from among the assets taken charge of by the receiver a proceeding against the receiver would naturally be proper, when a dispute of the claimant's right makes any proceeding necessary. The appropriate form would seem to be that upon petition in the receivership case in equity. 1 *Clark, Receivers,* secs. 543 and 664; *Praeger v. Implement Co.,* 122 Md. 303, 89 A. 501. But there are some situations in which the equity court may find reasons for authorizing the receiver to intervene and defend a pending suit for the same purpose. And, if the suit is confined to the demand for the return of property from among the assets, there would be no objection to making the receiver a defendant in his own name. Possibly the

equity court might also find reasons for having the receiver defend a suit against the corporation for the recovery of money, but it would seem improper for the receiver to defend such a suit in his own name; he should defend in the name of the corporation, for the plaintiff, recovering judgment, would be entitled at most only to file his claim in the receivership proceeding on it, and, that being true, it would be inconsistent to give him a judgment against the receiver on its face requiring the receiver to pay out money from the assets at all events, irrespective of the rights of other claimants against them. 1 *Clark, Receivers,* sec. 561; *Horsey v. Martin,* 142 Md. 52, 55, 120 A. 235. And see *Riehle v. Margolies,* 279 U. S. 218, 49 S. Ct. 310, 73 L. Ed. 669; *Attorney Gen. v. Supreme Council,* 196 Mass. 151, 81 N. E. 966; 30 *Yale L. J.* 674.

This court is of opinion that, in the absence of any showing in the record to the contrary, it may be presumed that the consent of the equity court to the substitution of the receiver as defendant was obtained; and that the question of the propriety of that consent is not open to consideration in this proceeding. An action of detinue cannot properly be joined with one for the recovery of damages merely (1 *Poe, Pl. & Pr.,* sec. 285), and, of course, it is one of the principal obstacles to the joinder of parties and actions that several different judgments, not one joint judgment, would be recovered in the one proceeding. 1 *Poe, Pl. & Pr.,* secs. 282, 285; *Williams v. Bramble,* 2 Md. 313, 318; *Philadelphia, W. & B. R. Co. v. Constable,* 39 Md. 149, 157; *Haines v. Haines,* 104 Md. 208, 217, 64 A. 1044; *Price v. Mutual R. Ins. Co.,* 107 Md. 374, 381, 68 A. 689. But the provision in the Code, art. 5, sec. 10, that in no case shall this court decide any point or question which does not plainly appear by the record to have been tried and decided in the court below, seems to prevent consideration of any question of misjoinder, or of practical difficulty arising from the differences in the situations of the parties sued. *Sasscer v. Walker,* 5 G. & J. 102, 110; *Cushwa v. Cushwa's Lessee,* 5 Md. 44, 54; *Barker v. Ayers,* 5 Md. 202; *Standard Co. v. O'Brien,* 88 Md. 335, 340, 41 A.

898; *Novak v. State,* 139 Md. 538, 542, 115 A. 853. We therefore take up the appellants' objections to rulings during the trial as argued.

The evidence on behalf of both sides showed that in August of 1929, Coale arranged with Delcher, a vice-president of the bank, for a loan upon the collateral security of 376 shares of the stock of a Beneficial Industrial Loan Corporation, for which Coale held a certificate in the name of one Mannix, duly indorsed by Mannix. The board of directors of the bank approved a loan for the full amount of Coale's purchase price, and Coale signed and delivered his note for that amount, with the Mannix certificate deposited as collateral. On behalf of the plaintiffs it was testified that Coale, apparently within the next few days, in August, sold to each of the plaintiffs a hundred shares of the stock which he had so pledged, and was paid in full for them from the proceeds of the sale of other securities placed in his hands by the plaintiffs for the purpose. As has been stated, Coale failed to redeem the shares sold from the pledge for his own loan; the money he received from the sale he appropriated to his own use, depositing it in his own private account. Coale testified for the plaintiffs that he had promised to pay Delcher a portion of the profits which might be derived from sale of the stock, and that he did, on September 5th, pay Delcher $600, by check drawn to Delcher's order and subsequently indorsed by Delcher in his own individual name only. Delcher, called by the defendants, denied that he had any agreement with Coale other than appears on the face of the papers. He was not questioned more specifically about the payment of any money to him by Coale. It was testified that on September 19th, Coale settled with the Misses Mylander for the sale made and payment from the sale of the other securities, and returned to them the excess from the proceeds of these other securities over and above the price agreed for the Beneficial Corporation stock, with interest on that excess for twenty-two days. The stock was for the time being, however, still left undisturbed in the possession of the bank; the certificate standing in the name of Mannix. Subsequent to these trans-

actions, Coale arranged with Delcher for a temporary with-
drawal of the certificates of the pledged stock, in order that
new certificates for 300 shares in the names of the Misses
Mylander might be procured, and the remaining 76 shares
might be sold elsewhere and transferred. For these purposes
the stock was redelivered to Coale upon his depositing with
the bank a trust receipt and separate powers of transfer or
assignments of the stock from the Misses Mylander to Coale,
dated September 23rd. An amount representing the remain-
ing 76 shares was paid by Coale to the bank. Coale paid the
next installment of interest on his loan for which the Bene-
ficial Corporation stock was pledged.

It was testified that Coale owned shares in a Bankers' Se-
curities Corporation, which were also pledged with the Ches-
apeake Bank, and that he arranged a second sale of that stock
to the Misses Mylander, and the plaintiffs in fact executed
the powers or assignments of their Beneficial Corporation
stock for the purpose of enabling him to procure money to
pay for the Bankers' Securities stock by a new loan upon the
security of both the Beneficial Corporation stock and the
Bankers' Securities stock. They executed and delivered to
him simultaneously collateral notes in favor of the Chesa-
peake Bank, on forms obtained from the bank, for the sum
of $2,500 each. Coale did not obtain the new loans for the
Misses Mylander, and did not sell the Bankers' Securities
stock to them, and he gives as a reason for it that he discov-
ered that that stock was valueless. He returned the notes to
the makers in the following December. Early in the year
1930 he admitted to the plaintiffs that the Beneficial Corpo-
ration stock for which they had paid had not been redeemed
by him, but had been allowed to remain pledged for his own
original loan.

Coale, for the plaintiffs, testified that he had agreed with
Delcher for the bank that the Bankers' Securities stock should
be sold to the plaintiffs, and that to facilitate this the Bene-
ficial Loan stock should be transferred to the names of the
Misses Mylander, new loans should be made to them upon
their notes, with their stocks in both corporations pledged as

collateral, and the powers or assignments for the Beneficial Loan stock given to Coale. And against this testimony stood Delcher's general denial that he had any agreement with Coale other than appeared on the face of the papers, and the fact that the Beneficial Corporation stock was already pledged for its full value. The president of the bank testified that he had no knowledge of any of the facts stated other than appeared from the papers, that the board of directors had none, that no share of profits from Coale's transactions with the plaintiffs came to the bank, and Delcher had no authority to agree for a division of such profits, which would be a very unusual transaction.

Whether upon the bank's surrendering the original certificates to Coale for the substitution of new certificates in the new names, there was a surrender of the original lien on the stock, seems to be of no practical importance. For whether we regard the lien claimed as the old one continued or as a new one substituted, the question of securing for the bank a clear pledge of stock in the names of the Misses Mylander would be one and the same. *Hickok v. Cowperthwait,* 210 N. Y. 137, 103 N. E. 1111. When that stock had been placed in the new names it could not be held upon a valid, enforceable pledge unless there were transfers from the owners; and the bank had such transfers in its possession. There is no doubt that a blank form of assignment for transfer, signed by the person in whose name the certificate is made out, will protect a *bona fide* pledgee from such misuse. *Jenkins v. Continental Trust Company,* 150 Md. 416, 133 A. 610; note, 24 *A. L. R.* 469: *Rights as between Customer and Sub-pledgee.* But it is questioned whether the powers or assignments given in this instance, on separate papers as they were, would be sufficient to support the pledge against the equities. The powers read: "For value received......hereby sell, assign and transfer unto..........(100) shares of the Capital Stock of the Beneficial Industrial Loan. Corp standing in my name on the books of said........represented by Certificate No..........herewith and do irrevocably constitute and appoint........attorney to transfer the said stock

on the books of the within named Company with full power of substitution in the premises." Each of the plaintiffs signed one of these forms. Under the Uniform Stock Transfer Act, Code, art. 23, sec. 51, this would be sufficient to pass an apparently clear title and right to pledge. *Jenkins v. Continental Trust Co., supra.* But it is contended that it is not sufficient in this instance because, first, the corporation was formed in the State of Delaware, the Stock Transfer Act has not been adopted there, and the validity of these forms must be decided according to the common law as ascertained by this court before the adoption of the act in this state. That the sufficiency of the forms would under the circumstances depend upon the law as decided in this state irrespective of the Stock Transfer Act may be conceded, but upon a different ground. The modern view, which seems to be generally approved in this country now, is that when stock in a corporation created under the laws of one state is transferred in a foreign state, the law of the state of transfer governs the effect of that transfer and the resulting rights of the parties between themselves. *Disconto Gesellschaft v. United States Steel Corp.,* 267 U. S. 22, 28, 45 S. Ct. 207, 69 L. Ed. 495; *Pilger v. United States Steel Corp.,* 102 N. J. Eq. 506, 508, 141 A. 737; *Christy, Transfer of Stock,* sec. 66. And that view was adopted by this court in *Kerr v. Urie,* 86 Md. 72, 76, 37 A. 789. It is settled in this state by the decision in *Patapsco Nat. Bank v. Meads,* 131 Md. 573, 579, 102 A. 993, that exactly the form of transfer or power of attorney used in this instance was sufficient to support a pledge and relieve the pledgee of equities between the assignor and the assignee. And, indeed, it is notorious that on this form innumerable sales and complete transfers are made, and are meant to be taken as giving the transferee and his transferees full rights of ownership. In the earlier case of *Taliaferro v. First Nat. Bank,* 71 Md. 200, 17 A. 1036, it was remarked that an assignment or power contained in a separate paper rather than in an endorsement would not render a certificate of stock negotiable, but the distinction would result in no change in the conclusion in this case, for after others have

acted in reliance upon a clear assignment on a separate paper such as the present one, the assignor is estopped to deny the implications of the transfer. In *Bartlett v. Calvert Bank,* 123 Md. 628, 634, 91 A. 549, an assignment or power on a separate paper was held sufficient to support reliance upon a pledge by the transferee. And see *Gardner v. McNeal,* 117 Md. 27, 37, 82 A. 988; *France, Principles of Corporation Law* (2nd Ed.), 169.

In the effort of the plaintiffs to establish that the bank was, nevertheless, not in the position of a *bona fide* pledgee without notice of their rights, some evidence was adduced to show that the sale of the Bankers' Securities stock was for and on behalf of the bank as pledgee, and that the misused powers or assignments were secured to facilitate that purpose of the bank's; and there was, as stated, evidence to the contrary. Questions for additional evidence on the point were excluded. Most of the excluded questions were directed to proof of an agreement with Delcher for the sale of the Bankers' Securities stock, with a profit to him, and it was objected by counsel for the receiver that the actions of Delcher in his own private interest would not be in representation of the bank, and binding upon it. There was testimony from which it might have been found as a fact that Delcher was acting for his separate individual profit, as well as transacting business of the bank, and it is true that his actions would bind the bank only in so far as he was acting for it within the proper scope of his agency. In so far as he, or any other officer of the bank, might be found to have stood in a position of conflicting interest or to have participated in Coale's dealings with the plaintiffs outside of the course of the bank's business, his actions would not bind the bank, and notice which those actions might have brought him of Coale's betrayal of the paintiffs would not affect the bank's rights under the pledge made. *Gemmell v. Davis,* 75 Md. 546, 23 A. 1032; *Black v. First Nat. Bank,* 96 Md. 399, 54 A. 88; *Bradford v. Harford Bank,* 148 Md. 1, 128 A. 899; *Lohmuller Bldg. Co. v. Gamble,* 160 Md. 534, 154 A. 41. And there may be force in the contention that, upon all the facts, any partici-

pation of Delcher or other agents in Coale's transactions with the plaintiffs would be found to have been outside the scope of the authority of any of those agents. But it seems to this court that, because of the exclusion of many of the questions asked, the court cannot say that the full ground of the plaintiffs' contentions on these points has been heard and considered. Some of the questions, especially the general introductory inquiries for the interest, if any, of the bank in the sale of the Bankers' Securities stock, should have been permitted, or excluded only after statements of what the plaintiffs sought to prove had been made and found insufficient. There are exceptions to rulings on twenty-four questions, and upon the explanation just made we conclude that there was error in the rulings made the subjects of those numbered 1, 9, 10, 12, 14, 15, 16, 17 and 24. Somewhat similar questions, made the subject of exceptions 3 to 6, inclusive, appear to have been answered sufficiently. Other exceptions to rulings on evidence we find not well taken.

The court's actions on the prayers for declarations of law could not be justly complained of by the plaintiffs. On a first prayer of the plaintiffs it was ruled that, if it were found that the powers or assignments of stock were procured from the plaintiffs by fraud, and that the bank had actual or constructive knowledge of the plaintiffs' ownership, then the verdict should be for the plaintiffs against the bank and the receiver. We may ignore the reference to the bank as a mistake; it was no longer a defendant and no verdict or judgment for or against it could be, or was, rendered. The prayer might be regarded as defective for use in a jury trial because of its failure to declare what would be constructive knowledge. But a more serious defect lay in its basing liability of the bank upon its notice of the plaintiff's ownership of the Beneficial Corporation stock, irrespective of the effect of their assignment of it, and any lack of knowledge of Coale's fraud in the use of that assignment. The same defect existed in a second and a third prayer of the plaintiffs, both of which were refused, It is still to be observed that the plaintiff's first prayer sought against the one defendant, the

receiver of the bank, recovery of damages appropriate to an action of detinue against one who held the stock, but inappropriate in an action against the joint defendants who did not hold the stock, one of whom is an appellee now. The prayers granted on behalf of the receiver conformed to the principles of law which we find applicable, as already stated, and there was no error in granting them.

The opinion has not so far dealt with the judgment in favor of Delcher, but it disposes of the questions which arise on the contentions for and against him. If he should be found to have participated in Coale's transactions with the plaintiffs to such an extent that he could be said to have shared in the misuse made of the powers or assignments given by the plaintiffs to Coale, he would be liable in damages for the conversion of the stock. In the evidence received, the trial court failed to find proof that Delcher had so participated, but with respect to the claim against Delcher, even more than with respect to that against the bank or the receiver, it appears necessary that more of the proof which the plaintiffs offered should have been heard, and that the rulings on evidence excepted to in exceptions numbered 1, 9, 10, 12, 14, 15, 16, 17 and 24 were erroneous, as previously stated.

*Judgment reversed, and a new trial awarded, with costs to the appellants.*

PARKE, J., concurs in the result.