STANDARD LUMBER CO. v. MILLER & VIDOR LUMBER CO.

No. 1986, Okla. T.    Opinion Filed June 26, 1908.

(96 Pac. 761.)

1.    CONTRACTS—Time as of the Essence—Statutory Provisions.
Section 809, Wilson's Rev. & Ann. St. 1903, providing that be-
fore time shall be the essence of a contract it must be ex-
pressly stipulated therein, no particular form of expression is
required; but it must appear from the express provisions con-
tained in such contract, independent of all extraneous matter
or circumstances, that it was the intention of the parties there-
to that time should be the essence thereof.

2.    APPEAL AND ERROR—Review—Findings of Court—Conflict-
ing Evidence.    Where there was no request of the court as
to any special finding and the case was tried before the court
without the intervention of a jury, the general finding of the
court on a question of fact will be conclusive in this court,
where there is a conflict as to the facts proved or a question
as to the sufficiency of the proof to sustain the issue on the
part of the party who had the burden.
(Syllabus by the Court.)

*Error from Probate Court, Oklahoma County; W. P. Harper,
Judge.*

Action by the Miller & Vidor Lumber Company against the
Standard Lumber Company.    Judgment for plaintiff, and de-
fendant brings error.    Affirmed.

This action was instituted in the probate court of Oklahoma
county, Okla. T., by the defendant in error, as plaintiff, on the
14th day of July, A. D. 1905, against the plaintiff in error, as
defendant, and reference will hereinafter be made to said parties
as they appeared in the court below.    Plaintiff in its petition al-
leges that during the months of February and March, 1905, it, at
the special instance and request of the defendant, sold and de-
livered to said defendant certain goods, wares, and merchandise
at an agreed price of $900.25, which price was the reasonable

market value thereof; that no part of said account has been paid except the sum of $698.97; that there now remains due and unpaid on such account the sum of $296.28, with 7 per cent. interest thereon from June 7, 1905.

Thereafter, on the 11th day of August, 1905, defendant filed its answer, wherein defendant denied specifically the correctness of the itemized account attached to plaintiff's petition, and for further answer alleged that on and before the 19th day of December, 1904, one L. F. Lee was a general contractor, and as such had a contract with the board of education of the city of Mangum, Okla., for the erection of a certain school building, and that the said L. F. Lee made and entered into an oral contract with the defendant by which the defendant was to furnish said Lee all lumber used in the construction of said building, and in which contract the time of delivery was made the essence of said contract, and on December 19, 1904, defendant made and entered into a certain contract by and with the Three State Lumber Company, as agent of the defendant, with full knowledge of the defendant's contract with L. F. Lee, then and there communicated by said defendant to said plaintiff, by which contract the said defendant ordered certain lumber from said plaintiff to be shipped, the first car in thirty days, and the balance in two weeks thereafter, said lumber to be shipped to the Noel & George Lumber Company, Mangum, Okla., and said order and contract entered into by and between said defendant, Three State Lumber Company, agent of plaintiff, was made in writing but said writing is not in the possession of the plaintiff and said plaintiff is unable to attach a copy thereof, but that afterwards plaintiff did receive an acceptance of said order so made by defendant with plaintiff's agent, Three State Lumber Company, which said acceptance is in writing and indorsed by plaintiff, "first car about thirty days, balance two weeks' thereafter," and that there is further endorsed thereon: "Salesman, Three State Lumber Co."

It is further admitted in said answer that defendant agreed to pay plaintiff for said lumber delivered at the time specified in

said order the sum of $977.97 f. o. b. Mangum, Okla.; that there-after, on the 10th day of January, 1905, defendant agreed that, if plaintiff would pay $21 per 1,000 instead of $18 for the first car of said bill of lumber, it would ship same sooner than the ₁9th day of January, 1905, the date on which said 30 days ex-pired; that said defendant agreed to pay said additional price, which said difference amounted to $17.28, making the additional price for all of said lumber the sum of $995.25; that said agree-ment for earlier delivery of said car between plaintiff and de-fendant was by letter, the first of which is dated January 7 1905, and the body of which is in *haec verba*:

"In regard to your order for heavy joists No. 3888, would like to ask if it is possible for you to make earlier shipment than thirty days. We would appreciate an effort on your part to make shipment earlier, as we are waiting on these joists, and should there be any additional costs by reason of such effort we will be pleased to reimburse you for same."

The plaintiff on January 10th replied, among other things, as follows:

"In response to yours of the 7th inst., we will request our mill to hurry shipment of your order for joists as much as pos-sible. We note your suggestion that you will be willing to pay additional cost in order to hurry shipment. The car containing the item 2x12-16 sized No. 1 was figured by the Three State Lum-ber Co., who took this order, on basis of thoroughly dry weights, and very low at that. We have been cutting and piling this stock in order that it may dry as the price would not justify the ship-ment of green stock. If you will let us raise the price on this one item from $18 to $21 in order to cover the green weight, it will expedite shipment considerably, and we believe it would be advisable for you to do this. Please let us hear from you promptly."

On January 13, 1905, defendant replied to plaintiff as follows:

"Replying to your favor of January 10th, we would not ob-ject to paying the additional amount asked for in order to secure the first two cars of 2x14's before the time specified in our order.

The first car is due at Mangum on the 19th inst., the balance two weeks later. The 2x12's you will notice are ordered in the last car, and are to be used on the roof of the building."

On January 16, 1905, plaintiff replied to defendant as follows:

"In response to yours of the 13th, we have changed the price on the 2x12-16 in accordance therewith, and have instructed our mill that this material must go at once, and will keep behind them to see that it gets on the road right away without delay."

On January 24, 1905, defendant wrote plaintiff as follows:

"We have not yet received notice of shipment of the first car for Mangum, Okla. T. This was due on the 19th inst. at Mangum. We must have this shipment at once as the delay is going to cause us great expense. The time of delivery is what caused us to place this order with the Three State people, for we could have bought it at a lower figure if we had cared to wait any length of time. Have wire tracer started after this shipment at once, and kindly do not cease your efforts to have it at destination at the earliest possible moment."

Plaintiff wrote defendant in reply as follows:

"Replying to your favor of the 24th, advise that we are working on the order and will hand you invoice for same soon. The wet condition of the woods at this season of the year makes slow work to get out logs for this class of sawing, however, we have this order well in hand and will move same without unnecessary delay. Trusting this will be satisfactory."

On February 3, 1905, defendant wired plaintiff as follows:

"Wire routing initials and numbers on cars containing Mangum joists."

On same date plaintiff answered defendant as follows:

"We are in receipt of your wire of date, and will furnish information requested just as soon as we can obtain same from the mill."

On February 8, 1905, defendant wrote plaintiff as follows:

"Will you kindly advise us why you cannot give us the numbers of the cars which you wired Mr. Lee were shipped on the 28th of January, for Mangum?"

On February 11th, defendant wrote plaintiff as follows:

"One car of your joists have gone forward in I. & G. N. 1239, and the others will follow in the next day or two. As the weather has been so bad in this section on account of continued rains and wet grounds, it has been almost impossible to haul and skid logs of any size."

On February 28, 1905, defendant wrote plaintiff as follows:

"There are yet more joists to come from you. Kindly do not cease your efforts to start these on the road. Any delays because of our failure to have the material delivered in time will result in a loss to us, and these are now past due."

Plaintiff answered defendant as follows:

"In response to yours of the 28th ult., we have been writing our mill every day that the remaining joists must be shipped this week and we hope to hand you invoice in the next day or two."

On March 19, 1905, defendant wrote plaintiff as follows:

"We are informed that the remainder of Mangun joists have not yet reached destination, and that the delay is resulting in considerable expense. In your letters regarding this shipment you stated that this would not be delayed longer than a day or two. It is now thirty days since the last car was shipped. What is the matter with you? If you cannot get this order out notify us to that effect and stop this expense, and do not continue to promise shipment from day to day, unless you intend to do so. Kindly advise us by wire what you can do in regard to making immediate delivery of the remainder of this order. Awaiting your prompt attention, we remain."

On March 21st plaintiff wrote defendant as follows:

"In response to yours of the 18th. If you ask what is the matter with the elements, you will come nearer getting at the truth. It has been raining throughout the milling section almost constantly for the past sixty days, and the woods are in such a soggy and soft condition that it is practically impossible to haul logs of any size out. We have half the car of 2x14 loaded and the logs for the balance ready to load, and we hope to get them into the mill today or tomorrow, and make shipment by Wednesday or Thursday without fail. Our mills are not alone in being

thus tied up in their operating departments. They are all in the same boat."

On March 22nd defendant wired plaintiff as follows:

"Can wait for Mangum joists no longer. If do not hear from you by tomorrow noon, will place remainder of order elsewhere and charge your account with difference."

On March 24th plaintiff answered by wire as follows:

"Remaining joists for Mangum have been shipped. Invoice by next mail."

Defendant further alleged that plaintiff knowingly represented from day to day that said shipment was being made as agreed, and by such false representations prevented defendant from getting said lumber elsewhere in order to fulfill its said contract with the said L. F. Lee. Defendant further alleges that it has paid to said plaintiff and for freight and other charges the sum of $698.97; that, by reason of said plaintiff's failure to ship said first car of lumber, said plaintiff is not entitled to recover the difference of $3 per 1,000 feet, or the amount thereof, to wit, $17.28, and, further, by reason of the delay in the shipment of said lumber by plaintiff contrary to the terms of its said contract, defendant has become liable and paid to the said L. F. Lee the sum of $275 for damages on account of delay and the expenses therein incurred and caused to the said L. F. Lee.

The said cause was tried by the court without the intervention of a jury. The proof on the part of the defendant showed that L. F. Lee as president of the Standard Lumber Company, with the concurrence of the secretary, made a contract with himself as contractor for a certain bill of lumber, being the lumber in this order placed by the defendant with the plaintiff; that the lumber was ordered, and received by the Standard Lumber Company by the defendant of the plaintiff per defendant's contract with L. F. Lee, said contract having been agreed to by the secretary of its company; that said L. F. Lee was to pay the defendant the customary price, and the defendant would cut the customary per cent. off of its bill of lumber; that defendant

was to ship this lumber within a certain specified time, to wit, first car within 30 days and next car within two weeks thereafter; that the agent of plaintiff in placing this order had knowledge of this agreement as to time; that the defendant in making settlement with Mr. Lee allowed him $275 damages occasioned by said delay, this sum being paid out for the transportation of bricklayers and carpenters on two or three occasions, which was necessitated on account of delay in receiving the material. The testimony tends to prove that the agent of plaintiff had knowledge of the facts that such lumber was to be furnished by the defendant to L. F. Lee within a specified time, and that with such knowledge the defendant placed this order with a view of having it shipped within such specified time. Proof shows that the expense or damage was incurred by the stopping of the work, that the contractor was misled by the statement that the joists were on the road, and that the workmen were kept there as long as possible waiting for the arrival of the car or cars of lumber; that, when the first car arrived, the contractor supposed that the lumber had been shipped in accordance with directions—that is, that the specified pieces, dimensions, and the like would be sent in the first car, and that the hands were kept there and detained until the same was unloaded. There is no conflict in any of the testimony in this record. Judgment was rendered in the court below in favor of the plaintiff in the sum of $275. The expense items in the way of damages claimed by the defendant are as follows:

| | |
|---|---:|
| To extra expense on Mangum school-house because of the delay of shipment of lumber, first extra trip of bricklayers, transportation from Shawnee | $ 30.00 |
| Transportation from Shawnee and Oklahoma City | 24.00 |
| Paid to A. E. Hayes as foreman, 31 days | 93.00 |
| L. F. Lee, personal expense on five extra trips to Mangum, hotel 15 days at $2 | 30.00 |
| 10 railway tickets at $4.15 | 41.50 |
| Foreman and two bricklayers, $4.15 | 12.45 |
| 4 laborers, $4.15 | 16.60 |
| First extra trip for carpenters, foreman, and 6 men, 7 at $4.15 | 29.05 |
| | $275.00 |

Motion for a new trial was filed in due time, which was over-ruled and exceptions duly saved.

The cause is now properly before this court on petition in error.

*W. F. Wilson* and *H. E. Elder,* for plaintiff in error.
*Shartel, Keaton & Wells,* for defendant in error.

WILLIAMS, C. J. (after stating the facts as above). This cause having been tried by the court without the intervention of a jury, wherever there was a conflict as to the facts proved, the determination of the trial court thereon will be conclusive here.

The first question arising is whether or not in the contract between plaintiff and defendant as to the delivery of the lumber by a specified date time was of the essence thereof. Section 809, Wilson's Rev & Ann. St. 1903, reads as follows: "Time is never considered as of the essence of a contract, unless by its terms expressly so provided." In the case of *Snyder v. Stribling*, 18 Okla. 205, 89 Pac. 233, the court says:

"No room is. left for cases of necessary implication. The extreme difficulty of applying the equitable rule and of determining what class of contracts make time as of the essence of the contract by necessity or implication has given the courts much perplexity, and has furnished a fruitful field for litigation. Under our statutory rule all doubt is banished, and, if the contracting parties desire to make time as of the essence of the contract, they must so expressly stipulate in the contract, otherwise time will not be so considered. There is nothing in the case at bar that shows that time was intended to be treated as of the essence of the contract. * * * *"

Section 1267, Rev. Civ. Code S. D., is identically the same as section 809, *supra,* (Wilson's Rev. & Ann. St. 1903.) In the case of *Strunk v. Smith et al.,* 8 S. D. 407, 66 N. W. 926, the court says:

"The above section, which is in derogation of the common law, is taken from what is known as the Civil or David Dudley Field Code, prepared for the state of New York, and to which the commissioners affixed the following note: 'This provision is

new.  As to the present law upon the subject, see Story, Eq. Jur.
§ 776.  It involves so much difficulty that the commissioners
deem it wise to adopt this more stringent rule.'  Civ. Code, p.
253.  The terms, condition, and purpose of the deposit are clearly
expressed in the written instrument by which the transaction
was evidenced; and when considered, as it must be, with the deed
and written agreement of the bank to pay respondent interest
thereon, it is amply sufficient to show the clear intention of the
parties, and to supersede all prior or contemporaneous oral ne-
gotiations concerning the subject to which such instruments re-
late.  Comp. Laws §§ 3545, 3553-3555, 3557.  While it is in
effect stated that the patent is to be furnished within two years
from the date of the contract, there is nothing written to indicate
that it was ever intended that respondent, in case of a failure
in that particular, should forfeit $700 of the money for which
he had sold his farm, * * * Our statute will neither allow
time to be of the essence of a contract by implication nor permit
an oral extrinsic showing that such was the intention of the par-
ties to a written contract, the terms of which are expressed in
clear and explicit language."

Section 5362 of the Revised Code of North Dakota of 1905
is also identically the same as section 809, *supra* (Wilson's Rev. &
Ann. St. 1903.)  In the case of *Fargusson v. Talcott*, 7 N. D.
183, 73 N. W. 207, the court, in construing this section, says:

"For this reason he should be allowed to stipulate in his con-
tract that a failure to pay on the day specified shall destroy the
rights of the defaulting party in a court of equity as well as in
a court of law.  This provision need not be in any particular form,
but it is usual to express it in the manner in which it was ex-
pressed in the contract in question.  After some vacillation on
the part of the English Chancellors, the rule was there adopted,
and it prevails in this country as well, that the parties may by
their agreement make time as of the essence thereof; and that
in such a case a failure to comply with the terms of the contract,
at the time named therein for performance, will debar the per-
son in default from claiming any rights thereunder, even in a
court of equity."

In the case of *Longworth v. Taylor*, 1 McLean, 395, Fed.
Cas. No. 8,490, the court said:

Vol. 21—40

"In almost all modern cases in which time has been strictly regarded it was made of the essence of the contract by the express agreement of the parties; and the language of the decisions combats the idea that this cannot be done. * * * In looking to the facts of the case under consideration, it appears that time was not made of the essence of the contract. The times at which the payments were to be made, and the period in which the deed was to be executed, were fixed in the contract; but there was no expression that a failure in any of these should void the agreement."

It was clearly not the intention in the adoption of such a statutory provision as this to require the identical language of the statute to be inserted in a contract before time could become the essence thereof. Code provisions have ever been adopted for the purpose of abolishing technicalities and applying substantial justice, and it necessarily follows that where it appears by the language expressed in a contract, regardless of the phraseology or the form of expression used, that it was the intention of the parties thereto that time should be the essence of the contract, that should be the construction in law. Of course, in making a proper construction, a court will be confined to what is expressed in the contract, and will be precluded from going outside of the same and considering contemporaneous and extraneous matters. For a determination of that character, including therein matters outside of the expressed contract, in order to make time the essence of the contract, would be by implication, and by the adoption of section 809, *supra,* time cannot be construed to be the essence of a contract by implication.

In view of the conclusions hereinafter reached, it will neither be necessary to determine whether or not by the language used in this contract that time was the essence of the same, nor that after the expiration of the time limit in demanding the shipment, assigning as a reason that the delay would occasion great expense, would amount to a waiver thereof. In any event, before the defendant would have been entitled to special damages, it would have been necessary for it to have proved by a preponder-

ance of the testimony that at the expiration of the time limit it could not have procured the lumber covered by said shipments from others in time to have completed the building in question without the incurring of such damages as was claimed by the defendant in this action. See *Murdock v. Jones,* 3 App. Div. 221, 38 N. Y. Supp. 464. As a general rule, the measure of damages is the difference between the contract price and the price at which the contracted articles can be obtained in the nearest market, and as to whether or not the defendant brought itself within the exception and by proof put itself without the general rule so as to be able to claim special damages was a question of fact, and is concluded by the general finding of the court. See *Booth v. Mill Co,.* 60 N. Y. 487; *Smith v. Flanders,* 129. Mass. 324.

It is not necessary to determine as to whether or not the plaintiff could avail itself of the contention that the contract between the defendant and the said L. F. Lee was void on account of the statute of frauds. But see *Mewburn's Heirs v. Bass,* 82 Ala. 622, 2 South. 520.

All the issues having been found in favor of the plaintiff by the general finding of the court below, and every presumption in this court being in favor of such finding, we are unable to say that any error was committed against the defendant.

The judgment of the lower court is affirmed.

All the Justices concur.