## AMERICAN REFINING CO. v. BARTMAN et al.

(Circuit Court of Appeals, Eighth Circuit. November 5, 1919.)

No. 5304.

1. FRAUDS, STATUTE OF ⬤▷112—DEFINITE STATEMENT OF PRICE IN CONTRACT FOR SALE OF GOODS.

Contract for sale of gasoline, to be shipped as ordered during the year, *held* to satisfy the statute of frauds, by definitely stating the price, notwithstanding the provision, "Prices to be mutually satisfactory at time of shipment," in view of another provision, which was clearly to govern, and the actions of the parties under it.

2. CONTRACTS ⬤▷162—DISREGARDING INCONSISTENT EXPRESSION WHERE INTENT CLEAR.

Where the intentions of the parties are clearly ascertainable from the contract and their mutual actions under it, inconsistent expressions in it must be disregarded.

3. SALES ⬤▷54—CONSTRUCTION OF CONTRACT BY PARTIES.

Where contract for sale of 40 cars of gasoline between parties to a prior existing contract for sale of 60 cars, to be shipped as ordered during the year, was sent for execution in a letter defining it as an "additional contract 40 cars gasoline," and stating it was on the "same basis" as the earlier one, its construction in a later letter from the seller as one for delivery within the year, being accepted by the buyer, was binding on the parties.

4. CONTRACTS ⬤▷10(4)—MUTUALITY OF SALES CONTRACT AS CONSTRUED BY PARTIES.

Contract for certain number of cars of gasoline, having been construed by the parties as calling for shipment as ordered during a certain year, the objection of lack of mutuality, in that no time was fixed for delivery except as buyers might order, could not be sustained.

5. SALES ⬤▷71(4)—CONSTRUCTION OF CONTRACT AS LIMITING AMOUNT TO NEEDS OF BUSINESS.

Contracts for sale of 60 and 40 cars of gasoline, to be delivered as ordered during the year, are not open to construction as limited to the amount the buyers needed to conduct their business during the year.

6. SALES ⬤▷174—AVAILABILITY OF BUYER'S BREACH IN REFUSING TO PAY AFTER BREACH BY SELLER.

The seller, having in three important respects, one of which prevented further deliveries, breached the contract of sale of a definite amount, to be delivered as ordered during the year, cannot avoid future performance and liability because of a subsequent breach by the buyer in refusing to make further payments till assured of deliveries.

In Error to the District Court of the United States for the Eastern District of Oklahoma; Martin J. Wade, Judge.

Action by Max Bartman and another, partners under the name of the Gasoline Filling Station, against the American Refining Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

A. A. Davidson, of Tulsa, Okl. (Preston C. West, Roger S. Sherman, Grey Moore and James A. Veasey, all of Tulsa, Okl., and John H. Brennan, of Bartlesville, Okl., on the brief), for plaintiff in error.

Ben R. Estill, of Kansas City, Mo. (A. F. Evans and Frank P. Walsh, both of Kansas City, Mo., on the brief), for defendants in error.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

⬤▷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

STONE, Circuit Judge. From recovery for breach of contracts to supply gasoline defendant brings its writ of error.

The company, an oil wholesaler, entered into two form contracts with the partners, who were retailers of gasoline, as follows:

Order No. ———.                                        Date 4—5—1915,
M—— American Refining Company:
Ship to Gasoline Filling Station
At 1724 Grand Av.          When—As ordered during 1915.
How ship, S. Fé or Katy
Terms usual.
Salesman, ———. Buyer, ———.
60 T/cs 60/62 Gravity Gaso
Prices to be mutually satisfactory at time of ship—
For each advance in K. C. tank wagon prices the f. o. b. refining prices to
    advance ½ the amount—
This based on present prices of 6c refinery Kans. rate of freight and K. C.
    market 9.80
                                        J. F. Campion.
                              Gasoline Filling Station, by Alex A. Smith.

Order No. 202                                         Date 5/5/1915
M—— American Refining Company:
Ship to Gasoline Filling Station
At Kansas City, Mo.        When—As ordered.
How ship, ———.
Terms 1/10 net 30
Salesman, J. F. Campion.  Buyer, A. A. Smith.
40 T/cars 60/62 Gasoline.  For each advance in K. C. tank wagon market the
    f. o. b. Refy. prices to advance ½ the amount
This based on present prices of 6c refinery Kansas rate of freight and K. C.
    wagon market 9.80                    American Refining Co.,
                                        By J. F. Campion, Treas.

The latter of the above instruments, after being executed by Campion for the company, was mailed to the partners, in the following letter:

Walter Hennig, President; Thos. H. Kennedy, Vice-President; E. A. De
        Meules, Secretary; J. F. Campion, Treasurer.

American Refining Company, Refiners of Petroleum, Gasoline, Naphtha,
    Kerosene, Neutrals, Cylinder Stock, Paraffine, and All Petroleum Products.

Export Station, New Orleans, La.  St. Louis Office, 711 La Clede Gas Bldg.
    Cable Address, "Amrefco," Western Union Code.

                    General Offices and Refinery:
                              Muskogee, Oklahoma, May 7, 1915.
Additional Contract 40 Cars Gasoline.
    Gasoline Filling Station, 1724 Grand Avenue, Kansas City, Mo.—Gentlemen:
Attention Mr. A. A. Smith.  You will remember, when I was last in Kansas
City, you told me to book you another forty cars of 60/62 gasoline on same
basis as your previous contract for 60/62 gasoline.  I am inclosing you order
No. 202, which I believe you will find entirely satisfactory.  If you do, please
sign the original and return for our file.
    Thanking you for the business, and hoping to see you soon, I am
        Yours very truly,            [Signed]  J. F. Campion, Treasurer.

Shipments began April 6, 1915, and continued to November 30, 1915, by which time 58 cars had been delivered. There was entire harmony until November 4th, up to which time 47 cars had been delivered. Upon that date the company attempted to avoid responsibil-

ity under the contract on the ground that Campion had no authority to make the contract for the company, and in fact had made it on the theory that the company was acting as the commission agent for another company, the Jane Oil & Gas Company. The partnership refused to release the company and to accept the Jane Oil & Gas Company in its place, but said they would not object to the company making its deliveries through the Jane Oil & Gas Company, or any other medium. The parties maintained these positions thereafter. During November the successor to the Jane Oil & Gas Company, the Peerless Refining Company, furnished 11 cars. On November 24th Campion wrote that the contract of May 5th was for deliveries in 1915. On December 2d the partnership wrote asking deliveries of the remaining 42 cars (2 under the April 5th contract and 40 under that of May 5th) in December, at the rate of 1 or 2 a day. December 6th the Peerless Company wired that it would ship 3 cars per week (12 during the month), "but you must first give us satisfactory assurance of prompt payment." Up to this time every car had been promptly paid for under the terms of the contract, which allowed 30 days, and there is not the slightest evidence in the record of any reason to suspect future default in payments. The partnership replied that they would make no further payments to the Peerless until the "American Refining Company gives to us satisfactory assurance they, or some one for them, will complete our shipments under the terms of our contract with them." At that time shipments ordered were past due, and had not been shipped. Further shipments were refused, though repeatedly ordered. Something over $5,000, due after this correspondence on November shipments, were deposited by the partnership with a trustee, to be used in these payments if shipments were maintained. It was never paid. The partnership, which had an established business, with three filling or sales stations, was compelled to purchase gasoline at higher prices.

The propositions advanced here by the company are:

"First. That the alleged contract of April 5th is void under the statute of frauds, in that no price is fixed for the gasoline to be shipped thereunder.

"Second. That the alleged contract of May 4th is void for want of mutuality.

"Third. That if the contracts are to be held valid and enforceable, they call only for such quantity of gasoline as the plaintiffs needed to conduct their business for the remainder of the year 1915 and no more, and that substantially such amount was furnished; the damages for failure to deliver the remainder being more than offset by the money owing from the plaintiffs for gasoline furnished and not paid for.

"Fourth. That the plaintiffs breached the contracts by announcing their refusal to pay for shipments made, except upon a condition not within the terms of the alleged contracts."

[1, 2] The first contention is based on the statement in the contract of "prices to be mutually satisfactory at time of shipment." If this were the only or the controlling provision in the contract regulating prices, there would be much force in this contention. But there is also the provision that—

"For each advance in K. C. tank wagon prices the f. o. b. refining prices to advance ½ the amount— This based on present prices of 6c refinery Kans rate of freight and K. C. market 9.80."

This latter provision is clear, definite, and unambiguous. Payments were made throughout upon this basis, without the slightest question from either party. There was no doubt in their minds upon this point. The former provision cannot be given force without antagonizing the latter, which was clearly to govern. Where the intentions of the parties are clearly ascertainable from the contract and the mutual actions of the parties under it, inconsistent expressions must be disregarded. This contract, so construed, was definite as to price and fully met the requirements of the statute of frauds.

[3, 4] The basis for the claim that the second contract lacks mutuality is that there was no time fixed for the delivery of the gasoline, except as the partnership might order it. This contract was transmitted to the partnership for execution, in a letter which defined it as being an "additional contract 40 cars gasoline" and which stated that the contract was on the "same basis" as the earlier one. This letter is properly a part of the understanding between the parties. Taking this contract and letter, together with the earlier contract, it is evident that the intention was that this contract was for an amount in addition to that called for by the existing contract, and that the 40 cars should be shipped as ordered during 1915. Toward the end of that year, November 26th, the Peerless Company, which was acting for the company, placed that interpretation upon it in a letter where it said:

"That portion relative to deliveries reads as follows: 'As ordered during 1915'—which is in accordance with what I told you, when you were here. Of course, the order of May 5th for 40 cars was simply an increase of the first order of 60 cars, and the letter of the American Refining Company of May 7th indicates this, and states that the order for 40 cars was booked 'on same basis as your previous contract for 60/62 gasoline.' Therefore the arrangement under which you are now receiving gasoline from us will terminate December 31, 1915. In compliance with your request, Mr. Aiken has submitted a proposition to furnish your 1916 requirements. * * *"

The partnership accepted that construction, and promptly ordered delivery during 1915. The company should not now be permitted to escape on the ground that the contract lacked distinctness and mutuality in this very respect.

[5] The third contention contains no merit, for the contracts certainly and clearly state 60 and 40 cars respectively.

[6] The fourth contention is very singular under the facts of this case. The company had distinctly breached the contract by declaring that it was not bound thereby. It seems, however, to have hesitated to definitely refuse performance, and had arranged with the Jane Oil & Gas Company, later the Peerless Refining Company, to carry out its part of the contract, although it never ceased contending that it was not bound by the contract. Then the Peerless Company, while acting for the company, without any reason or excuse, and when every payment due for cars theretofore delivered had been promptly made, stated (December 6th) that it would make no more deliveries until given "satisfactory assurance of prompt payment." It also stated that it would even then deliver only 12 cars during December, when the contracts called for, and the partnership had ordered, 42 cars. If, in the face of this situation, the refusal of the partnership to make fur-

ther payments until assured of deliveries under the contract was a breach of the contract, because made "upon a condition not within the terms of the alleged contracts," then certainly the demand for assurance of payment was equally a breach for the same reason. Having breached the contract in three important respects, one of which prevented further deliveries, the company is in no position to avoid future performance and liability because of a subsequent breach by the partnership. White Oak Fuel Co. v. Carter, 257 Fed. 54, —— C. C. A. ——.

The judgment is affirmed.