## SOUTHWESTERN COAL CO. v. GUNN.

No. 10402—Opinion Filed Dec. 13, 1921.

Rehearing Denied Dec. 12, 1922.

(Syllabus.)

1. **Appeal and Error—Review—Questions of Fact—Verdict — Pleading — General Denial—Question of Interest.**

The question of interest may be shown under a general denial, which is a plea of the general issue at common law; and where no instruction is given by the court or requested by plaintiff in error, and the jury finds generally that defendant in error is the real party in interest, and there is competent evidence in the record to support this finding, it will not be disturbed on appeal.

2. **Stipulations—Interpretation of Contract.**

Where the parties to a contract agree upon upon the trial that it was to be performed within one year from its date, the court will view it from this standpoint in further construing it for the purpose of determining whether it is invalid for want of mutuality.

3. **Sales — Contract for Sale of Coal — Validity—Action for Breach.**

An order in the following language: "9-29-1916. Southwestern Coal Company. Ship to C. E. Gunn, El Reno, Oklahoma. thirty cars Creek Lump as ordered, $3.25.

If the entire thirty cars are used and paid for by August 1, 1917, the coal will be invoiced at $3.00. Coal will be shipped one car at a time," which is duly accepted, constitutes a valid and subsisting contract, and an action for its breach may be maintained by either party

4. **Same—Measure of Damages.**

The measure of damages in the sale of personal property where delivery is refused, and the property has no special value to the purchaser, and it cannot be ascertained with any degree of certainty when delivery should be made, is the difference between the contract price and the market price at the time the contract is breached.

5. **Same — Insufficiency of Instructions— Reversal.**

Record examined, and held, that the instructions given are so fundamentally erroneous and incomplete that the verdict of the jury and the judgment entered thereon must be set aside and a new trial granted.

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by C. E. Gunn against the Southwestern Coal Company for breach of contract to sell coal. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Stuart, Sharp & Cruce, for plaintiff in error.

Ledbetter, Stuart, Bell & Ledbetter, for defendant in error.

PER CURIAM. This is an action for damages for breach of contract. The case was tried to a jury in the district court of Oklahoma county, and verdict and judgment rendered in favor of defendant in error, plaintiff below, in the sum of $1,000 and plaintiff in error, defendant below, has appealed and assigns error.

The part of the contract material to this action is as follows:

"9-29-1916. Southwestern Coal Company. "Ship to C. E. Gunn, El Reno, Oklahoma thirty cars Creek Lump as ordered. $3.25. If the entire thirty cars are used and paid for by August 1, 1917, the coal will be invoiced at $3.00. Coal will be shipped one car at a time.

"C. E. Gunn"

Two days thereafter this order was accepted by plaintiff in error, and the transaction was merged into what the parties have treated as a contract.

The material averments of defendant in error's petition are, in substance, that

plaintiff in error breached the contract in that it failed and refused to ship the coal; that the price advanced, and that by reason of its failure to ship the coal as ordered he had been damaged in the sum of $3,000, the price having advanced in this sum at the time the contract was breached by letter June 9, 1917. To this petition is exhibited the order and acceptance. To motion of plaintiff in error to make the petition more definite and certain, defendant in error responded with an amended petition which in no way affects the allegations of the original petition and will not be further considered.

Plaintiff in error demurred to the petition generally because it did not state facts sufficient to constitute a cause of action, and specially because the contract sued on and exhibited to the petition was invalid for want of mutuality of obligation. The demurrer being overruled, plaintiff in error answered with a general denial, and that defendant in error had waived whatever rights he had under the contract for lack of diligence in asserting them, and also that the contract was a mere option, not binding on defendant in error, unilateral, and void for want of mutuality.

It will be observed that the last ground of defense was relied on in the demurrer and overruled, and whether it may again be relied on in the answer without leave of the court is a question which is not now decided.

Two cars of the coal were shipped in September, 1916. Defendant ordered by 'phone other cars, along through the fall and forepart of the winter, which were not shipped, and finally, on the 7th day of June, 1917, ordered a car by letter, shipment of which was declined by letter on June 9, 1917, and all further shipments refused.

There is nothing to show the date these orders were made except the order of June 7, 1917, or what would be a reasonable time for delivery.

In our view of the case it will only be necessary to consider the 6th and 11th assignments of error, which are as follows:

(6) "The court erred in overruling the defendant's demurrer to the plaintiff's evidence for the reason that the same did not establish a cause of action in favor of the plaintiff and for the further reason that the plaintiff's own evidence showed conclusively that he was not the real party in interest."

(11) "Fundamental error of the court in giving instructions presented to the jury for the reason that the same and each part thereof was so incomplete and erroneous as to fail to state the issues and principles of law applicable thereto."

The question of interest may be shown under a general denial, which is a plea of the general issue at common law, and no instructions being given by the court or requested by plaintiff in error, the jury found generally that defendant in error was the real party in interest, and there being competent evidence in the record to support this finding it will not be disturbed on appeal.

Is the contract so uncertain or so one-sided in its obligations as to render it unenforceable? We think not.

A simple statement of the contract is as follows:

"Defendant in error proposed to purchase from plaintiff in error thirty cars of coal, Creek Lump, at $3.25 per ton, to be shipped one car at a time as ordered and if it is all received and paid for against August 1st, 1917, the price will be $3.00 per ton."

This proposition was accepted by plaintiff in error and two cars of coal shipped under it, and the evidence shows that the average car consisted of about 40 tons.

The parties agreed on the trial that the contract was to be performed within one year from its date, and it is from this standpoint we will view it in further construing it for the purpose of passing upon its validity.

Contracts are invalid for want of mutuality when they are obligatory only upon one of the parties, and are void for uncertainty when their meaning is so vaguely expressed as to be wholly unascertainable. It is by these rules that the contract at bar must stand or fall. Under our statutes (section 953, Rev. Laws 1910) contracts must receive such interpretation as renders them definite and certain, if it may be done without doing violence to the intention of the parties.

We think the intention of the parties is easily ascertainable, and that there cannot in reason arise any confusion or misunderstanding as to the terms and covenants of the undertaking or as to what the parties intended the meaning of the same should be. The seller sold and the purchaser purchased 30 cars of coal at a fixed price, to be shipped on order

of the purchaser within a year and part of it was shipped, the parties neither doubting nor disagreeing as to the rights and obligations of each, and this court will not now enter the realm of speculation and undertake to conjure up for the convenience of either party some fanciful obscurity or uncertainty about which the parties themselves never dreamed.

It is argued with much force by counsel for plaintiff in error that the cases of Rogers v. White Sewing Machine Co., 59 Okla. 40, 157 Pac. 1044, and Cold Blast Transportation Co. v. K. C. Bolt & Nut Co., 114 Fed. 77, are decisive of the case at bar. The contracts in those cases are entirely dissimilar to the contract in question and subject to a different rule of interpretation, and, as construed and applied by the court in those cases, have no application to this case. In Rogers v. White Sewing Machine Co., supra, the contract, as found by the court, provided that defendant would sell to plaintiff such machines as he might order at a stipulated price, and that plaintiff was to have the territory of Haskell county in which to sell the machines as long as he sold them. The contract is silent as to the number of machines purchased or as to the time in which it is to be performed, nor is it possible for the court to fix any time for performance. It in no way enjoins the performance of any particular act in a particular time or that must be performed within a reasonable time in order to give effect to the contract, but embraces successive acts to be performed indefinitely. The court held this contract void for want of certainty and mutuality; it being subject to termination by defendant at will without incurring any liability to plaintiff and imposing upon him no obligation to purchase any particular number of machines, he could purchase none or a carload, as he chose.

In Cold Blast, etc., Co. v. K. C. Bolt & Nut Co., supra, the contract was simply a submitted and accepted price list for a period of six months with option of renewal for another six months with no specifications as to the articles to be ordered and shipped from the list or the quantity. Some might be ordered, or none; some might be shipped, or none; some might be received, or none, as the peculiar whims or convenience of the parties might suggest.

Judge Sanborn, delivering the opinion of the court, said:

"There was therefore in the inception of this alleged agreement no consideration for the promise of either of the parties to it, except the promise of the other. Neither the letter nor the acceptance names any quantity or amount of the article specified that is to be delivered or received under it. The plaintiff does not agree to deliver, nor does the defendant contract to receive or pay for, any quantity or amount whatever of the articles named in the writings. * * * It must bind the promisor, so that the promisee may maintain an action for its breach, or it is without legal effect and void. A promise to furnish, deliver, or receive specified articles at certain prices, without any agreement to order or to accept any amounts or quantities of the articles, is without binding force or effect, because neither party is thereby bound to deliver or to accept any quantity or amount whatever. Such promises are void, because they lack one of the essential elements of an agreement-certainty in the thing to be done. * * * But the fatal defect in the alleged contract was that the plaintiff was not bound to deliver, nor the defendant to take and pay for, any specific quantity of the offered articles."

In one of these contracts no time is fixed or can be fixed for performance, while in the instant contract the time of performance is fixed by agreement of the parties. In both of the contracts the quantity to be shipped is not stipulated, while in the contract herein the quantity is definite and certain.

In the case of American Refining Company v. Bartman, 261 Fed. 661, the contract involved was very similar to the one in question here. It was simply an order and acceptance for the shipment of 60 tank cars of gasoline as ordered, at a fixed price, within a definite period of time. Subsequently 40 more cars were ordered on the same basis. Judge Stone, in rendering the opinion of the court, said:

"Contract for a certain number of cars of gasoline having been construed by the parties as calling for shipment as ordered during a certain year, the objection of lack of mutuality in that no time was fixed for delivery except as the buyer might order could not be sustained."

Finally, it is insisted that the charge of the court to the jury is so fundamentally erroneous that it fails to state the issues joined and principles of law applicable thereto, and in this we think plaintiff in error is correct. The court failed to define the issues, and failed to interpret the contract and submit its interpretation to the jury, which it should

have done, the validity of the contract being challenged for want of certainty and mutuality.

The court charged the jury as follows:

"If you find and believe from the evidence that the defendant breached the contract in question, then you will find for the plaintiff in the sum that he has been damaged by such breach, and in determining the amount of plaintiff's recovery you will take into consideration the difference, if any, between the market price of the coal to be delivered under the contract as contemplated by said contract and the contract price of the coal."

This instruction is erroneous and prejudicial to the rights of plaintiff in error.

The measure of damages in the sale of personal property where delivery is refused and where the property has no special value to the buyer is the difference between the contract price and the market price at the time delivery under the contract should be made. Section 2860, Rev. Laws 1910; Kingfisher Mill & Elev. Co. v. Westbrook, 79 Okla. 188, 192 Pac. 209; Tootle et al. v. Kent et al., 12 Okla. 685, 73 Pac. 310; Standard Lumber Co. v. Miller Lumber Co., 21 Okla. 627, 96 Pac. 761; Booth v. Mill Co., 60 N. Y. 487; Smith v. Flanders, 129 Mass. 324.

.In the instant case, however, there is no way to tell when the coal should have been delivered. It cannot be ascertained when the orders were made that were made. It cannot be known when the orders would have been made that were not made, and the contract having been breached within a short time of its termination and no special value to the buyer having been shown, the measure of damages is the difference between the purchase price of the coal and the market price at the time the contract was breached, which was June 9, 1917, and the jury should have been instructed accordingly,. instead of leaving it to wander about in a maze of uncertainty and finally to guess at the damages it should assess when the same is so certain as to be the subject of mathematical calculation.

The case is reversed, and remanded to the district court of Oklahoma county, with directions to grant a new trial.