## GREEN, Rec., v. COLEMAN-NELSON CORP.

No. 15750—Opinion Filed Sept. 29, 1925.

Rehearing Denied Dec. 15, 1925.

**1. Sales—Failure to Deliver—Elements of Damage to Buyer.**

Under section 5984, C. S. 1921, two elements of damages in case of breach are provided for, one general, being the value to the buyer measured by the difference in the contract price and market price at time of breach; the other special, being loss of some special value to buyer contemplated by the parties and outside the difference in the contract and market price of the thing bought.

**2. Receivers—Ratification of Sale Made by Former Receiver—Liability.**

A receiver who ratifies a sales contract made by a former receiver is responsible for its fulfillment from the time of his ratification, and he is in no wise liable on said contract before his appointment, and ratification of same.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Tulsa County; Z. I. J. Holt, Judge.

Action by James H. Green, as receiver of Mid-Co Petroleum Company, against Coleman-Nelson Company. Judgment for defendant, and plaintiff appeals. Reversed.

Bell & Fellows, Stanley D. Campbell, and Humphrey & Campbell, for plaintiff in error.

F. E. Riddle and Neeley & Wooley, for defendant in error.

Opinion by THREADGILL, C. This action was commenced March 11, 1922, by plaintiff in error, as plaintiff, against defendant in error, as defendant, to recover $7,038.94 for 3,043.32 barrels of Osage crude oil delivered through plaintiff's pipe line to defendant's tanks in West Tulsa during the month of January, 1922. Plaintiff claimed that the verbal agreement, ratified by the correspondence, provided that the receivers of the Mid-Co Petroleum Company would furnish to defendant 1,000 barrels maximum or 800 barrels minimum per day, at 45 cents above the posted market price of the Prairie Oil & Gas Company for crude oil, the same being $2 per barrel, and

1,374.53 barrels of its deliveries were under this agreement, making the sum of $3,-367.60; that on January 19, 1922, the parties modified this agreement for defendant to pay the posted market price same as first agreement with no premium, but 20 cents per barrel for pipe line service, and 1,668.79 barrels were delivered under this agreement, making the sum of $3,671.34. Plaintiff pleads the agreement, the ratification in writing, the itemized statement verified, the letter changing the contract, the failure of defendant to pay; and prays for judgment in the sum of $7,038.94.

Defendant answered, and by leave of court filed an amended answer by way of general denial, and further stated that it entered into a contract with E. R. Kemp and George N. Moore, receivers of said Mid-Co Petroleum Company, to deliver to it a maximum of 1,000 or a minimum of 800 barrels of Osage crude oil per day. It admitted the price as stated in plaintiff's petition, but alleged that the 45 cent premium was on condition that said receivers had to pay such premium, otherwise only pipe line charges. Defendant states that the said receivers did not have to pay premium charges and did not pay 45 cents above the market price for the oil they delivered. The amended answer further states that it relied on the agreement, and made arrangements and planned its business in expectation of the contract being complied with for the minimum of 800 barrels of crude oil per day. Defendant states that the contract was not complied with, the minimum amount was not furnished, or furnished for only a few days, and thereafter only about one-fifth or one-fourth of the minimum amount agreed upon was furnished the defendant. It states that it complained for about 60 days that the contract was not being complied with and that plaintiff promised from day to day to furnish the amount of oil agreed upon, but failed. It is further stated that defendant relied upon plaintiff's promises to furnish the said oil and maintained its business at a large expense, expecting to, and preparing to, receive and treat said oil at the rate of 800 barrels per day, and by reason of plaintiff's failure to comply with the contract, the same was breached, and defendant had "sustained a detriment and loss in the approximate sum of $15,000 over and above the amount due plaintiff for the balance of the oil so purchased." The modification of the contract is admitted by the defendant, but it says the same was made without any intent or purpose to waive its damages and

detriment accrued to it on account of the breach of the agreement of November 10, 1921. Defendant then pleads a counterclaim of 25 cents on every barrel of oil delivered to it by plaintiff, alleging the amount to be the sum of $2,560 on this item, and it states further that on account of detriment suffered by breach of the contract, it was entitled to expenses paid out and loss of profits upon the quantity of oil the plaintiff agreed to deliver and failed to deliver, being approximately 650 barrels per day, making the loss the sum of $15,000, and for all of which it asks for judgment against plaintiff. There was a general denial reply. These issues were tried to the jury January 8, 1924, and resulted in a verdict and judgment in favor of defendant in the sum of $10,644.67, with interest at the rate of 6 per cent. per annum until paid and all costs, and plaintiff has appealed to this court alleging many assignments of error, the principal of which is that the damages asked for by defendant in its counterclaim are special damages under the statute, and were not sufficiently stated in the petition to entitle the same to consideration by the court and form the basis of the judgment.

Plaintiff states his contention in three propositions: "(1) It is necessary to state special damages resulting from the breach of the contract specifically and circumstantially, in order to apprise the other party of the facts intended to be proved. (2) Special, as contradistinguished from general damages, is that which is the natural, but not the necessary, consequence of the act complained of. (3) The proper measure of damages for the breach of a contract for the sale of personal property is the difference between the contract price and the market price at the time delivery should have been made under the contract."

1. There seems to be no controversy as to plaintiff's claim for the amount and price of the oil delivered, but the controversy and questions to be settled arise out of the damages claimed by defendant for breach on the part of the plaintiff. The law applied by the court in trying the issues on defendant's counterclaim for damages is section 5984, Comp. St. 1921, which reads as follows:

"The detriment caused by the breach of a seller's agreement to deliver personal property, the price of which has not been fully paid in advance, is deemed to be the excess, if any, of the value of the property to the buyer, over the amount which would have been due to the seller under the contract, if it had been fulfilled."

This is the controlling statute in cases of this sort, and, in order to understand whether or not the court made a proper application of its provisions in the trial of the case, we must determine what is meant by the words "excess, if any, of the value of the property to the buyer over the amount which would have been due to the seller," etc.

This court in citing this section in the case of the Southwestern Coal Co. v. Gunn, 88 Okla. 3, 211 Pac. 398, uses the following language in the body of the opinion:

"The measure of damages in the sale of personal property, where delivery is refused and where the property has no special value to the buyer, is the difference between the contract price and the market price at the time delivery under the contract should be made."

This seems to be a construction of this section, and this construction finds support in the text of Standard Lumber Co. v. Miller & Vidor Lumber Co., 21 Okla. 617, 96 Pac. 761, pages 626 and 627, as reported in the Oklahoma Reports, where Chief Justice Williams, speaking for the court, in discussing the question of damages under breach of a sales contract, uses this language:

"In any event, before the defendant would have been entitled to special damages, it would have been necessary for it to have proved by preponderance of the testimony that at the expiration of the time limit it could not have procured the lumber covered by said shipments from others in time to have completed the building in question without the incurring of such damages as was claimed by the defendant in this action. See Murdock v. Jones, 3 App. Div. 221, 38 N. Y. Supp. 464. As a general rule, the measure of damages is the difference between the contract price and the price at which the contracted article can be obtained in the nearest market, and as to whether or not the defendant brought itself within the exception and by proof put itself without the general rule, so as to be able to claim special damages, was a question of fact and is concluded by the general finding of the court."

It appears from this construction that there are two elements of damages contemplated by this sales statute, the one general, being the difference in the contract price and the market price at time of delivery; the other special, based upon some special and particular value of the property outside the general rule to the buyer. The first element is subject to the general rule of pleading and proof, and the second is subject to the rule governing special

damages. In other words, in order to allege general damages under this statute, it is only necessary to plead the contract, the breach, and state the damages in general terms, and, to prove the same, show the contract and the market price at the time of the breach, and in order to allege special damages, it is necessary to state the particulars of the special damages, being the particular value of the property to the buyer beyond the difference in the contract price and the market price, and further state by facts or circumstances that the same was in the contemplation of the contract, and then introduce proof of the facts alleged. Globe Refining Co. v. Landa Cotton Oil Co., 190 U. S. 540, 47 L. Ed. 1171; Moffit West Drug Co. v. Byrd, 92 Fed. 290; Standard Lumber Co. v. Miller, 21 Okla. 617, 96 Pac. 761.

Applying this construction of the statute to the facts of the case at bar, it is plain that defendant's answer was not sufficient to plead special damages in loss of profits by reason of the breach of the contract, and the same was not sufficient to admit evidence in proof of special damages in loss of profits, and the evidence introduced tending to prove these allegations of the amended answer and the instructions of the court on this element of damages were erroneous.

Plaintiff contends that the above section of the statute is presumed to be a part of the contract and the detriment mentioned therein was in contemplation of the parties, and then proceeds to construe the statute to mean only general damages and that the general damages include loss of profits. But with this contention we cannot agree, since this court, as above stated, in construing this statute, has made a difference in the two elements of damages.

2. Plaintiff further contends that defendant was permitted to recover damages for breach of contract on the part of E. R. Kemp and George N. Moore, the former receivers of the Mid-Co Petroleum Company, and this was error. The record discloses that the contract was made with Kemp and Moore on November 10, 1921, and the plaintiff, Green, as receiver, was appointed as such December 10, 1921, and under the contract with Kemp and Moore, undertook to deliver Osage crude oil to the defendant, and brought suit to recover for oil delivered from January 14th to January 26, 1922. We think plaintiff is bound by the contract and liable for any breach from and after the date of his appointment and ratification of the contract, but we are of the opinion that plaintiff's contention is not correct as to the liability of plaintiff for any breach before his appointment. 23 R. C. L. section 93; Decker v. Gardner (N. Y.) 11 L. R. A. 480.

We are therefore of the opinion the cause should be reversed and remanded for new trial not inconsistent with the views above expressed.

By the Court: It is so ordered.

Note.—See under (1) 35 Cyc. pp. 633, 642; 24 R. C. L. pp. 72-74; 3 R. C. L. Supp. p. 1358; 4 R. C. L. Supp. 1528. (2) 34 Cyc. p. 245.