## STANDARD PIPE & SUPPLY CO. v. OIL STATE PIPE CO.

No. 19563.    Opinion Filed Oct. 7, 1930.

144

J. W. Brooks, for plaintiff in error.

Dudley B. Madden, Walter Hubbell, A. F. Moss, and H. R. Young, for defendant in error.

DIFFENDAFFER, C. This is an action brought by Oil State Pipe Company and W. J. Birch against the Standard Pipe & Supply Company, Jake Baren, and Max Jaffe to recover judgment for breach of an alleged oral contract for the sale of certain pipe. Plaintiff Birch and defendants Baren and Jaffe were dismissed from the cause and are not parties to the appeal.

Trial was had to a jury, resulting in a verdict and judgment for plaintiff Oil State Pipe Company, and defendant Standard Pipe & Supply Company appeals.

The assignments of error presented are: Error in overruling a demurrer to plaintiff's petition; overruling demurrer to plaintiff's evidence; refusing motion for directed verdict for defendant and the giving of certain instructions.

It is first asserted that the trial court erred in overruling defendant's demurrer to plaintiff's petition, in that the contract pleaded was alleged to be oral, for the sale of some 40,000 feet of standard 6 in. pipe at 55c per foot, being for more than $50, was within the statute of frauds. That other allegations contained in the petition were insufficient to remove the contract from the operation of the statute of frauds.

The petition alleges, in substance, that on or about December 2, 1926, defendant entered into an oral contract with plaintiff, whereby they agreed to sell and deliver to plaintiff 40,000 feet of standard line pipe in sound and usable condition for 55c per foot, free on board cars at Devol, Okla.; that as a part of said agreement, plaintiff was to procure a bank in Oklahoma to agree to honor drafts drawn by defendant on plaintiff, which they did by arranging with the Security State Bank of Blackwell, Okla., and that said state bank on December 2, 1926, wired defendant that it would honor draft on plaintiff for $23,000, six-inch pipe line at 55c per foot, tally O. K. by William Birch or Chas. Triger, draft to be drawn by Standard Pipe & Supply Company; that thereafter defendant in partial performance of said oral contract, actually delivered to plaintiff 2,548.5 feet of said line pipe, and through inadvertence drew a draft on plaintiff through said bank for 2,815 feet 9 inches of pipe, which draft was drawn in obedience to and in accordance with said oral contract, and was paid by said bank.

As we understand defendant's argument, it is contended that the petition was insufficient in that there was no certain pipe designated in the alleged contract and no sufficient description of the pipe attempted to be sold, it only being described as being in sound and usable condition; that the contract alleged was too uncertain and lacked mutuality of obligation in that there was no allegation that plaintiff was bound to accept, and that the petition did not sufficiently allege a delivery and acceptance of a part of the property, so as to validate the oral contract under the statute of frauds.

As to the first contention, we think the same wholly without merit. The alleged contract was that the pipe was to be "6 inch, Standard Line Pipe in sound and usable condition." We think this a sufficient description. It is certainly as definite as a given number of bales of cotton, middling basis. Numerous cases have held this or similar descriptions to be sufficient.

The next contention is that because the petition alleged that the contract was that the pipe was to be subject to inspection and acceptance at time of loading, the plaintiff could, by mere refusal to inspect and accept, defeat the contract if it so desired, or in case the pipe would prove to be worth less than 55c per foot at the time of loading. This is also without merit. Plaintiff could not, by refusing to inspect when defendant tendered sound and usable 6-inch pipe, defeat the contract. True, either plaintiff or defendant could have defeated the contract by refusal to perform at any time before partial performance. But after delivery and acceptance of a part of the pipe, the oral

contract became binding on both parties, and plaintiff could not arbitrarily refuse to accept sound and usable pipe of the size provided in the contract and thereby escape liability under its contract. Neither could defendant escape by refusal to furnish such. However, it is urged that there was no sufficient allegation of delivery and acceptance of a part of the pipe. This contention is also without merit. True, the petition alleges that defendant did actually deliver to plaintiff a part or the pipe, to wit, 2,548 feet, without specifically alleging that plaintiff accepted the same. But the petition does allege that, in obedience to and in accordance with said contract, defendant drew a draft on plaintiff for 2,815 feet, and that the draft was paid by the bank. We think this sufficiently alleges receipt and acceptance of a part of the pipe. Certainly plaintiff's intention to accept will be inferred by the payment when facts are pleaded showing a delivery. We think it is unnecessary to go further and specifically allege that the buyer did accept.

The assignments as to the overruling defendant's demurrer to plaintiff's evidence and refusal to direct a verdict for defendant may be treated together.

Defendant in its answer denies the oral agreement to sell plaintiff the 40,000 feet of line pipe. It admits the sale of 2,815 feet and 9 inches, but asserts that this was a sale of that much line pipe only, and was a single transaction, and that it never contracted or agreed with plaintiff to sell it 40,000 feet, or any quantity whatever of line pipe, other than the particular 2,815 feet and 9 inches, which it alleges plaintiff bought and paid for as one entire transaction, and specifically denies that this 2,815 feet of pipe was delivered by defendant to plaintiff as a part fulfillment of any contract or agreement to sell and deliver a greater amount of line pipe.

W. J. Birch, the purchasing agent of plaintiff, and Morris Zelickson, its president, testified positively to the contract had over the telephone with Jake Baren, president of defendant company for the purchase of 40,-000 feet of 6-inch line pipe as alleged in the petition.

There is positive evidence as to the delivery of the 2,548 feet and 5 inches of line pipe as a part of that contracted for, and the drawing and payment of the draft, as alleged in the petition, and of a statement attached to the draft reading as follows:

"Standard Pipe & Supply Company, Inc.
"Iron and Steel Products.
"Office.
"3217 Main street, Phone Y 6200
"Dallas, Texas.                    Dec. 6, 1926.
"F. O. B.
"Charge.    Sold to Oil State Pipe Company,
"Via. Car Penna.—840378        Blackwell,
                                          "Oklahoma.
"2815-ft. 4-in. of 6" S. H. Line pipe
    "@ 55c ft._____$1,548.43
            "F. O. B. Shipping Point.
"Pipe cutting and threading to order."

Mr. Baren and his bookkeeper or secretary both positively deny the agreement and testify that in the telephone conversation referred to by plaintiff's witnesses, Baren positively refused to sell plaintiff any pipe whatever, but referred them to Dave Caplan, vice president of defendant company, who was at Wichita Falls, Tex., in charge of defendant's sales department at that place and in the vicinity thereof, including Devol, Okla. Caplan testified, in substance, that the sale of the 2,815 feet of pipe was made by him and that no other pipe was mentioned. The evidence is thus conflicting on the question of what the contract was. It is equally conflicting on whether the delivery made was in part fulfillment of the contract testified to by plaintiff's witness, or whether it was a single transaction as claimed by defendant. There is other evidence introduced by both parties tending to sustain their respective contentions. But it clearly appears that when the demurrer to plaintiff's evidence was submitted and overruled, there was evidence reasonably tending to support plaintiff's contention, and the demurrer was therefore properly overruled.

The evidence being thus in conflict, the motion of defendant presented at the close of the evidence was properly denied under the well-established rule that the court may not direct a verdict for either party where there is a substantial conflict in the evidence on the material issue.

Defendant contends that the instruction given on the measure of damage was erroneous. The instruction was:

"You are instructed, gentlemen of the jury, should you find that plaintiff is entitled to recover in this action, the measure of damage would be the difference in the price for which he purchased said pipe and

the price for which same was contracted to be sold for by plaintiff, plus the expense of delivery of said pipe to destination."

The instruction is perhaps erroneous in that it uses the words, "plus the expense of delivery," when it should have said minus such expense. But it is not challenged on that ground. No instruction was offered on this point, nor was the error called to the attention of the trial court. The complaint is that it should have told the jury that the measure of damages was the difference between the sale price and the market value of the property.

The verdict is not excessive, being for but $1,746.40, whereas the petition and proof of plaintiff were sufficient to sustain a verdict for $2,996. The verdict is not challenged as being excessive. Where this is the case, it has been frequently held that the giving of an instruction on the measure of damages, though not entirely correct, is not reversible error. Lusk v. Kennedy et al., 73 Okla. 307, 176 Pac. 502; Muskogee Elec. Traction Co. v. Richards, Adm'r, 97 Okla. 61, 222 Pac. 265.

Section 5984, C. O. S. 1921, provides:

"The detriment caused by the breach of of a seller's agreement to deliver personal property, the price of which had not been fully paid in advance, is deemed to be the excess, if any, of the value of the property to the buyer, over the amount which would have been due to the seller under the contract, if it had been fulfilled."

Ordinarily the value of the property to the buyer, as used in this section, means the market value thereof at the place and time contracted for, but it has been held that there are two elements of damages contemplated by the statute—the one general and the other special. Green v. Coleman-Nelson Corp., 115 Okla. 144, 242 Pac. 196. It was therein said:

"In order to allege special damages, it is necessary to state the particulars of the special damages, being the particular value of the property to the buyer beyond the difference in the contract price and the market price, and further state by facts or circumstances that the same was in the contemplation of the contract, and then introduce proof of the facts alleged."

Plaintiff alleged in the petition:

"Plaintiffs further state that at the time they entered into said oral contract with said defendants that they gave the said defendants to know and to have notice and knowledge of the fact that the plaintiffs herein had contracted to and had sold said 40,000 ft. of line pipe and all thereof at the price of 63c per foot at Devol, Okla."

The evidence on the point, in part, was:

"Q. What was the Tri County Gas Company to pay you for that pipe? A. 70c delivered at destination. Q. Is that the meaning of that in ink? A. Mr. Barlow put it there, his own handwriting. Left out and put it in with his own handwriting. Q. What would that have amounted to on the ground at Devol? A. 63c. Q. 63c would have been the net price received for it? A. Yes, sir."

There was some evidence tending to prove the allegations of the petition that plaintiff, at the time of the alleged contract, informed defendant that it had contracted to sell the pipe to another.

We think the allegations and proof sufficient to warrant the instruction.

It is contended that plaintiff is not entitled to recover for the reason that there is no evidence whatever that plaintiff endeavored to and was unable to purchase other pipe with which to supply its contract, at the expiration of the time provided in the contract, to wit, 10 days.

This contention, we think, is met by evidence tending to show that defendant many times during and after the 10 days assured plaintiff that it would deliver the balance of the pipe, and this continued for some 30 days, and that it was not until plaintiff had refused to take some pipe at Addington, Okla., which it claimed was not sound and usable pipe, that defendant finally refused to deliver any more pipe. From all the evidence it is fairly inferable that, due to defendant's failure to deliver, plaintiff lost the benefits of his contract to sell.

It is finally asserted that plaintiff could not recover for special damages in that it alleged, and its proof was, that the contract relied upon was of date about November 15, 1926, and the agreement or order for resale of the pipe to the Tri County Gas Company was dated November 26, 1926, some 11 days thereafter, and therefore plaintiff could not have informed defendant that it had resold or had an agreement to sell the pipe. This was explained, in that the evidence of plaintiff was that the order or writing referred to was but a confirmation of oral agreement theretofore had.

Finding no reversible error, the judgment should be affirmed.

BENNETT, HERR, HALL, and EAGLETON, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) anno. 36 A. L. R. 649; 25 R. C. L. p. 621; R. C. L. Perm. Supp. p. 5594; (2) 26 R. C. L. p. 1068; R. C. L. Perm. Supp. p. 5837; R. C. L. Continuing Perm. Supp. p.1080. (3) anno. 52 L. R. A. 209; 24 R. C. L. p. 75; R. C. L. Perm. Supp. p. 5413.